KAGEN CASPERSEN & BOGART PLLC
757 Third Avenue
New York, New York 10017
Telephone: 212-880-2045
Facsimile: 646-304-7879
*Attorneys for Drivetrain, LLC*

UNITED STATE BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

In re:

SUNEDISON, INC., et al.,

Reorganized Debtors.

Chapter 11

Case No. 16-10992 (SMB)
(Jointly Administered)

----------------------------------------------------------------X
DRIVETRAIN, LLC, IN ITS CAPACITY AS
TRUSTEE OF THE SUNEDISON LITIGATION
TRUST,

Plaintiff,

-against-

EVERSTREAM SOLAR INFRASTRUCTURE FUND
I LP and EVERSTREAM SOLAR
INFRASTRUCTURE FUND I GP LP

Defendants.

Adv. Pro. No. 19-01120 (SMB)

----------------------------------------------------------------X

**DRIVETRAIN'S REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF ITS MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1
BACKGROUND ............................................................................................................................ 1
ARGUMENT .................................................................................................................................. 3
   I.   DRIVETRAIN'S PROPOSED AMENDMENT IS NOT FUTILE ..................................... 3
   II.   DRIVETRAIN DID NOT UNDULY DELAY IN SEEKING TO AMEND ...................... 9
CONCLUSION ............................................................................................................................. 11

# TABLE OF AUTHORITIES

**Cases**                                                                                                      Page(s)

*In re Appraisal of Ford Holdings*,
    698 A.2d 973 (Ch. Div. 1997) ................................................................................ 6

*Block v. First Blood Assocs.*,
    988 F.2d 344 (2d Cir. 1993) ............................................................................. 10-11

*Bodum Holding AG v. Starbucks Corp.*,
    2020 U.S. Dist. LEXIS 192983 (S.D.N.Y. Oct. 16, 2020) .................................. 9, 10

*Clean Harbors, Inc. v. Union Pac. Corp.*,
    2017 Del. Super. LEXIS 591 (Del. Super. Ct. Nov. 15, 2017) ............................... 4

*Dilworth v. Goldberg*,
    914 F. Supp. 2d 433 (S.D.N.Y. 2012) ................................................................. 10

*Domain Assocs., L.L.C. v. Shah*,
    2018 Del. Ch. LEXIS 276 (Del. Ch. Aug. 13, 2018) .............................................. 6

*Duling v. Gristede's Operating Corp.*,
    265 F.R.D. 91 (S.D.N.Y. 2010) ........................................................................... 10

*In re Energy Transfer Equity, L.P. Unitholder Litig.*,
    2018 Del. Ch. LEXIS 156 (Del. Ch. May 17, 2018) ............................................ 3, 4

*Garrett v. Brown*,
    1986 Del. Ch. LEXIS 516, 1986 WL 6708 ............................................................ 6

*Hale v. Brewster*,
    81 N.M. 342 (1970) ............................................................................................... 5

*Hillman v. Hillman*,
    910 A.2d 262 (Ch. Div. 2006) ....................................................................... 3, 5, 6

*Horton v. Organogenesis Inc.*,
    2019 Del. Ch. LEXIS 273 (Del. Ch. July 22, 2019) ............................................... 4

*Kortum v. Webasto Sunroofs Inc.*,
    769 A.2d 113 (Ch. Div. 2000) ............................................................................... 5

*Middle Atl. Utils. Co. v. S.M.W. Dev. Corp.*,
    392 F.2d 380 (2d Cir. 1968) ................................................................................. 9

*Nordco A.S. v. Ledes*,
    1999 U.S. Dist. LEXIS 19605 (S.D.N.Y. Dec. 21, 1999) .................................. 9-10

*Pasternack v. Shrader*,
   863 F.3d 162 (2d Cir. 2017) .................................................................................................. 10

*Pieroski v. Town of Elsmere*,
   1984 Del. Supr. LEXIS 709 at (Supr. Del. March 26, 1984) ............................................... 4, 6

*Prows v. State,*
   8222 P.2d (Utah 1991) ........................................................................................................... 5

*Randolph Found. v. Duncan*,
   2002 U.S. Dist. LEXIS 362, 2002 WL 32862 ...................................................................... 10

*Resorts & Motel Advancement Dev. Agency v. Sloan* ,
   160 F.R.D. 449 (S.D.N.Y. 1995) ............................................................................................ 9

*Richardson Greenshields Secur., Inc. v. Mui-Hin Lau*,
   825 F.2d 647 (2d Cir. 1987) ................................................................................................... 9

*Rossdeutscher v. Viacom, Inc.*,
   768 A.2d 8 (Del. 2001) ........................................................................................................... 4

*Seidel v. Lee*,
   954 F. Supp. 810 (D. Del. 1996) ............................................................................................ 4

*Si Mgmt. L.P. v. Charlebois*,
   707 A.2d 37 (Del. 1998) ......................................................................................................... 6

*State Teachers Ret. Bd. v. Fluor Corp.*,
   654 F.2d 843 (2d Cir. 1981) ................................................................................................... 9

*Thales Alenia Space Fr. v. Thermo Funding Co.*,
   2014 U.S. Dist. LEXIS 109250 (S.D.N.Y. Aug. 7, 2014) ...................................................... 4

*Vanderbilt v. Schreyer*,
   91 N.Y. 392 (1883) ................................................................................................................. 5

*Zayo Grp., L.L.C. v. Latisys Holdings, L.L.C.*,
   2018 Del. Ch. LEXIS 540 (Del. Ch. Nov. 26, 2018) .............................................................. 4

**Statutes and Rules**

Delaware General Corporation Law § 220 ................................................................................... 6

Delaware General Corporation Law §262 .................................................................................... 6

Delaware Revised Uniform Limited Partnership Act § 17-1105 ....................................... 1, 3, 5, 6

Delaware Revised Uniform Limited Partnership Act § 17-502(c) ............................................... 7

Federal Rule of Civil Procedure 12(b)(6) ................................................................................. 1, 3

Sections 502, 547, 548 and 550 of the Bankruptcy Code ............................................................. 9

**Other**

*Black's Law Dictionary* (8th Ed.) ................................................................................................ 4

# PRELIMINARY STATEMENT

Defendants oppose Drivetrain's motion on two grounds. First, they say that the proposed amendment is futile because the newly added breach of contract claim is subject to dismissal pursuant to Rule 12(b)(6). Second, they say that Drivetrain unduly delayed in seeking leave to amend. Neither is well founded.

As a default rule, under section 17-1105 of the Delaware Revised Uniform Limited Partnership Act ("DRULPA") a partner expelled pursuant to a partnership agreement is entitled to receive the fair value of its partnership interest. An expelled partner is a "contract claimant" holding fixed rights to receive the fair value of its partnership interest. Defendants do not dispute that this is so but argue that this default rule does not apply because section 6.6 of the Partnership Agreement authorizes the General Partner to extinguish a defaulting partner's interest without "consideration". This argument turns on the meaning of the word "consideration" and it fails because, by definition, the performance of an existing legal duty (i.e. the making of a section 17-1105 fair-value payment) does not constitute "consideration". (Point I below).

Defendants fail to show that Drivetrain's delay in seeking leave to amend was motivated by bad faith or that Defendants will be unduly prejudiced if leave to amend is granted. (Point II below).

# BACKGROUND

EverStream Debtor made capital call payments to EverStream Partnership totaling $21,073,368. (PAC ¶ 20). After EverStream Debtor failed to fund a $212,014 capital call, Defendants notified EverStream Debtor that it was in material default under the Partnership Agreement and that "the General Partner has caused your entire interest in the Partnership to be

1

extinguished for no consideration pursuant to section 6.6 of the Partnership Agreement. As a result of the foregoing . . . your Capital Commitment, Capital Contribution, and Uncommitted Capital Commitment have been reduced to zero. . ." (PAC ¶ 22 & Weintraub Decl. Ex. C (ECF No. 11-3)).

Though the General Partner had already reduced EverStream Debtor's Capital Commitment to "zero", on March 17, 2016 the General Partner noticed another capital call of which the EverStream's pro-rata share was supposedly $3,535,531. (PAC ¶ 23 & Weintraub Decl. Ex. D (ECF No. 11-4)). After EverStream Debtor did not fund the March capital call, the General Partner notified EverStream Debtor that "your entire interest in the Partnership remains extinguished for no consideration pursuant to Section 6.6 of the Partnership Agreement. (PAC ¶ 22 & Weintraub Decl. Ex. G (ECF No. 11-7)).

The Partnership Agreement

> Section 6.6 of the Partnership Agreement states in relevant part:
>
> Permissive Adjustment of Defaulting Partner's Interest. The General Partner may make the changes in the interest of a Defaulting Partner that is in Material Default provided for in this Section 6.6.
>
> (a)    The General Partner may reduce or eliminate the Defaulting Partner's Capital Commitment, Capital Contributions and Uncontributed Capital Commitment to zero or by such proportion as the General Partner may elect in its discretion, ***and no Defaulting Partner shall be entitled to any consideration in connection with any such reduction or elimination***. If the Capital Commitment of a Defaulting Partner is reduced, then the Sharing Percentages of the Partners shall be adjusted accordingly with the result that future distributions to the Defaulting Partner pursuant to Section 8.2 will be reduced or eliminated. The reduction or elimination of the Defaulting Partner's Capital Commitment shall not affect the Defaulting Partner's obligation to make the payments to the Partnership provided for in Section 6.2 or to pay the interest that accrues under Section 6.1 and such payments shall not reduce the Defaulting Partner's Uncontributed Capital, if any. Any reduction of the Defaulting Partner's Sharing Percentage shall affect the Defaulting Partner's obligation to make contributions to the Partnership pursuant to Sections 5.1 and 5.3.
> \*    \*    \*    \*

2

      (c)    If the Defaulting Partner's Sharing Percentage is reduced to zero, then the General Partner may cause the Defaulting Partner's interest in the Partnership to be extinguished without affecting the Defaulting Partner's continuing obligation to make any payments pursuant to Section 6.2.

(Weintraub Decl. Ex. I (ECF No. 11)) (emphasis added).

The Partnership Agreement is governed by Delaware law. Section 19.5 states: "This Agreement and the rights and obligation of the parties hereunder shall be governed by and construed and enforced in accordance with the laws of the State of Delaware." Id.

### ARGUMENT

**I. DRIVETRAIN'S PROPOSED AMENDMENT IS NOT FUTILE**

As a default rule, under section 17-1105 of the DRULPA a partner "who is expelled pursuant to a partnership agreement is entitled to receive fair value for his partnership interest". *Hillman v. Hillman*, 910 A.2d 262, 277 (Del. Ch. 2006) (V.C. Strine). A partner that is so expelled is a "contract claimant holding fixed rights" to "receive the fair value of his partnership interest as of the date he was removed." *Id.*

Defendants do not dispute that this is true. They say, however, that this default rule does not apply if the parties agreed otherwise in their partnership agreement. Drivetrain does not disagree.

Where the parties differ is in their interpretation of the word "consideration" as used in section 6.6(a), where it states: "no Defaulting Partner shall be entitled to any consideration in connection with any such reduction or elimination". Defendants assume that the word "consideration" includes a fair-value payment made pursuant to DRULPA § 17-1105. Based on that reading, Defendants argue that Drivetrain's proposed breach of contract claim is subject to dismissal pursuant to Rule 12(b)(6) because the parties supposedly agreed in section 6.6 that a

3

Defaulting Partner is not entitled to a section 17-1105 fair-value payment.

The error in this argument lies in the assumption that the word "consideration" encompasses a DRULPA § 17-1105 fair-value payment.

"Limited partnership agreements are a type of contract, and must be construed in accordance with their terms to give effect to the parties' intent." *In re Energy Transfer Equity, L.P. Unitholder Litig.*, 2018 Del. Ch. LEXIS 156 at 45 (Del. Ch. Apr. 16, 2018) (quotes omitted). To determine the parties' intent, Delaware courts "give words their plain meaning unless it appears that the parties intended a special meaning." *Id.* (quotes omitted). "Under well-settled case law, Delaware courts look to dictionaries for assistance in determining a plain meaning of terms which are not defined in a contract." *Clean Harbors, Inc. v. Union Pac. Corp.*, 2017 Del. Super. LEXIS 591 at 20 (Del. Super. Nov. 15, 2017).[1]

The word "consideration" is not defined in the Partnership Agreement. Black's Law Dictionary (8th Ed.) defines "consideration" as "Something (such as an act, a forbearance, or a return promise) bargained for and received by a promisor from a promisee."

"Pivotal and fundamental to the essence of consideration is the bargained for mutual exchange of duties and obligations . . . [I]f the claimant is under a pre-existing legal duty to perform the service rendered, there can be no consideration present." *Pieroski v. Town of Elsmere*, 1984 Del. Supr. LEXIS 709 at 11 (Supr. Del. March 26, 1984); *Rossdeutscher v. Viacom, Inc.*, 768 A.2d 8, 21 (Del. 2000) ("a promise to do what one is legally obligated to do . . .

---

[1] Delaware courts commonly look to Black's Law dictionary for the plain meaning of terms that are not defined in a contract. See e.g. *In re Energy Transfer Equity, L.P. Unitholder Litig.*, 2018 Del. Ch. LEXIS 156 at 45 (definition of "partnership payment"); *Horton v. Organogenesis Inc.*, 2019 Del. Ch. LEXIS 273 at 10 (Del. Ch. July 22, 2019) (definition of "incur"); *Zayo Grp., LLC v. Latisys Holdings, LLC*, 2018 Del.Ch. LEXIS 540 at 24 (Del. Ch. Nov. 26, 2018) (definitions of "cancel" and "terminate"); *Julius v. Accurus Aero. Corp.*, 2019 Del. Ch. SEXIS 1343 at 24 (Del. Ch. Oct. 31, 2019) (definition of "issue").

. is not valid consideration"); *Seidel v. Lee*, 954 F.Supp. 810, 817 (D. Del. 1996) ("The pre-existing duty rule applies not only to modification of an existing contract but to a duty that is not contractual in nature – that is to say a duty imposed by law. A promise to comply with the federal securities laws is such a pre-existing duty.").

The pre-existing duty rule is a well-established maxim of contract law. See e.g. *Thales Alenia Space Fr. v. Thermo Funding Co.*, 2014 U.S. Dist. LEXIS 109250 at 9 (S.D.N.Y. 2014) ("neither the promise to do a thing, nor the actual doing of it, will be good consideration if it is a thing which the party is bound to do by the general law."; quoting *Vanderbilt v. Schreyer*, 91 N.Y. 392 (NY 1883)); *Prows v. State*, 8222 P.2d 764, 768 (Utah 1991) ("It is well recognized that the performance of a duty imposed by law is insufficient consideration to support a contract."; statutorily mandated assessment payments do not constitute consideration sufficient to support a contract); *Hale v. Brewster*, 81 N.M. 342, 345 (N.M. 1970) ("the promise to do what a person is already obligated by law . . . to do is not sufficient consideration for a promise made in return."; note given by client to attorney as fee for service not consideration where attorney had an existing duty to accept payment from the court as his sole compensation).

Here, because the obligation to pay fair-value for an expelled partner's interest is statutory, performance of that obligation, or a promise to do so, does <u>not</u> constitute "consideration". Accordingly, the phrase in section 6.6(a) – "no Defaulting Partner shall be entitled to any consideration" – does <u>not</u> mean, as Defendants assume, that a Defaulting Partner is not entitled to a fair-value payment pursuant to section 17-1105. Section 6.6(a) does <u>not</u> supersede or otherwise modify the statutory default rule that a partner "who is expelled pursuant to a partnership agreement is entitled to receive fair value for his partnership interest". *Hillman*, 910 A.2d at 277.

5

Interpreting the word "consideration" not to include the performance of a pre-existing legal obligation, like making a section 17-1105 fair-value payment, comports with Delaware rules of contract interpretation.

Under Delaware law, "[t]here can be no waiver of a statutory right unless that waiver is clearly and affirmatively expressed in the relevant document." *Kortum v. Webasto Sunfoofs Inc.*, 769 A.2d 113, 125 (Del Ch. 2000) (shareholder's agreement did not expressly provide for a waiver of statutory inspection rights under DGCL § 220); *In re Appraisal of Ford Holdings*, 698 A.2d 973, 978 (Del. Ch. 1997) (preferred stock certificate of designation lacked "clear affirmative words" waiving statutory right to appraisal under DGCL §262). It would have been simple enough for Defendants to include in section 6.6(a) clear affirmative words waiving any statutory right that a Defaulting Partner may have to payment for a reduction or elimination of its partnership interest. Instead, Defendants chose to use the word "consideration," the "essence" of which is a "bargained for mutual exchange of duties and obligations," not the performance of an existing legal duty. *Pieroski*, 1984 Del. Supr. LEXIS 709 at 11.

Any ambiguity as to whether the word "consideration" encompasses a section 17-1105 fair-value payment must be construed against Defendants. Under the doctrine of *contra proferentem*, an ambiguity in a document governing the rights of an investor in a business entity is resolved against the entity. *SI MGMT. L.P. v. Wininger*, 707 A.2d 37, 43 (Del. 1998) ("[A]mbiguous terms in [limited partnership] Agreement should be construed against the General Partner as the entity solely responsible for the articulation of those terms."); *Domain Assocs., L.L.C. v. Shah*, 2018 Del. Ch. LEXIS 276 at 27 (Del. Ch. 2018) (construing against issuer ambiguous term in LLC Agreement governing amount to be paid to member forced to withdraw).

6

Section 6.6(a) must also be interpreted to avoid forfeiture of EverStream Debtor's interest in the partnership. *Garrett v. Brown*, Nos. 8423 & 8247, 1986 Del. Ch. LEXIS 516, 1986 WL 6708, at 8-9 (Del. Ch. June 13, 1986) (because forfeiture is "highly disfavored" under Delaware law, "contracts will be construed to avoid such a result."); *Hillman,* 910 A.2d at 41-42 & n.47 ("equity abhors a forfeiture"). Accepting Defendants' interpretation of the word "consideration" as including the performance of an existing legal duty – i.e., making a section 17-1105 fair-value payment – would result in a forfeiture of EverStream Debtor's partnership interest; an interest in connection with which it contributed more than $21 million to the EverStream Partnership.

Defendants note that under section 17-502(c) of the DRULPA "a partnership agreement may provide" that a partner's failure to make a capital contribution will result in a "forfeiture" of that partner's interest in the partnership. But that is of no help to Defendants because section 6.6(a) does <u>not</u> provide for forfeiture. The word "forfeiture" does not appear in section 6.6. The elimination of a Defaulting Partner's interest without "consideration" is a different and narrower concept than forfeiture. That section 6.6 does not expressly provide for forfeiture despite express statutory authorization to do so is further indication that forfeiture was never intended. It would have been simple enough for the drafter to track the language of 17-502(c) by including the word "forfeiture" if that is what was intended.

Interpreting 6.6 to avoid forfeiture is consistent with the overall scheme of the Partnership Agreement, which includes other provisions governing the disposition of a Defaulting Partner's interests that would be mooted if section 6.6 is read to allow the General Partner to affect a forfeiture. Section 6.3 of the agreement contains detailed provisions governing the purchase of a Defaulting Partner's interest. (Weintruab Decl. Ex. I ECF No. 11). Section 19.18 grants EverStream Partnership a security interest in the limited partners'

7

partnership interests.  (Id.).  Both sections contemplate the payment of some value to a Defaulting Partner.  Either the amount resulting from the purchase price formula contained in section 6.3(b), or the surplus proceeds from a foreclosure sale pursuant to section 19.18.  There is little possibility that EverStream Partnership would ever elect to utilize one of those remedies if the General Partner had the power under section 6.6(a) to affect a forfeiture of a Defaulting Partner's interest.

Moreover, putting aside the meaning of the word "consideration", section 6.6(a) is riddled with drafting errors that render the provision as a whole inscrutable.  It appears that the drafter – that is, Defendants deal counsel – erroneously believed that a Partner's Sharing Percentage is calculated based on its Capital Commitment, when in fact Sharing Percentages are calculated based on the Partners' respective Capital Contributions.

The second sentence of section 6.6(a) states:  "If the Capital Commitment of a Defaulting Partner is reduced, then the Sharing Percentages of the Partners shall be adjusted accordingly. . ." (Id. (emphasis added)).  That is nonsense.  The Partners' Sharing Percentages are based on their respective Capital Contributions, not their Capital Commitments.  The term "Sharing Percentage" is defined in the Partnership Agreement as follows:  "Sharing Percentage with respect to any Limited Partner, means the ratio that the aggregate Capital Contributions of such Limited Partner bears to the aggregate Capital Contributions of all Limited Partners, as in effect from time to time." (Id. (emphasis added)).

The same error appears in the last sentence in section 6.6(a) states:  "Any reduction of the Defaulting Partner's Sharing Percentage shall affect the Defaulting Partner's obligation to make contributions to the Partnership pursuant to Sections 5.1 and 5.3." (Id. (emphasis added)).  That too is nonsense.  A Partner's obligation to make contributions pursuant to section 5.1 is not

8

affected by the Partner's Sharing Percentage, but rather the Partner's Capital Commitment. Section 5.1 states in relevant part: "Each Limited Partner agrees to contribute to the Partnership in cash an aggregate amount equal to such Limited Partner's <u>Capital Commitment</u>." (<u>Id</u>.(emphasis added)). Section 5.3, likewise, imposes use limitations on capital calls made "to the extent of any Uncontributed <u>Capital Commitments</u>." (<u>Id</u>. (emphasis added)).

Given the drafter's manifest lack of comprehension of the operable terms of section 6.6, and the resulting ambiguity in the section as a whole, even if the word "consideration" is given the meaning urged by Defendants (contrary to the word's plain meaning), the provision does not express an unambiguous intent to authorize the General Partner to affect a forfeiture of a Defaulting Partners interest in the partnership.

## II. <u>DRIVETRAIN DID NOT UNDULY DELAY IN SEEKING TO AMEND</u>

"In this Circuit, mere delay, 'absent a showing of bad faith or undue prejudice, does not provide a basis for the district court to deny the right to amend.'" *Bodum Holding AG v. Starbucks Corp.*, 2020 U.S. Dist. LEXIS 192983 at 25 (Oct. 16, 2020) (quoting *State Teachers Retirement Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981)); *Middle Atlantic Utils. Co. v. S.M.W. Dev. Corp.*, 392 F.2d 380, 384 (2d Cir. 1968) (in the absence of bad faith or prejudice three year delay not sufficient basis to deny leave to amend); *Richardson Greenshields Sec., Inc. v. Lau*, 825 F.2d 647, 653 n.6 (2d Cir. 197) (collecting cases where courts granted leave to amend after delays ranging from two to five years absent showing of prejudice or bad faith). Defendants fail to show either bad faith or undue prejudice.

While Defendants criticize Drivetrain for not explaining its delay in seeking leave to amend, they do not claim or attempt to show that Drivetrain's delay was in bad faith. Whatever

9

delay there has been is a result of the facts that: (a) under the Adversary Proceeding Procedures[2] this case has been stayed in all material respects since it was commenced; and (b) Drivetrain changed attorneys.  Both are reasonable explanations for any delay.  *Resorts & Motel Advancement Dev. Agency v. Sloan*, 160 F.R.D. 449, 451 (S.D.N.Y. 1995) ("The defendants' motion is not unduly delayed.  Although two years elapsed between the filing of the original answer and the filing of this motion, the action had been stayed for one year during that period."); *Nordco A.S. v. Ledes*, 1999 U.S. Dist. LEXIS 19605 at 17 (S.D.N.Y. Dec. 21, 1999) ("there has been no showing of bad faith or undue delay.  [Movants] explain that they waited so long to move to amend because they were investigating additional facts in relation to the case, and they changed attorneys."). "Although *some* explanation must be provided to excuse a delay . . . even vague or 'thin' reasons are sufficient, in the absence of prejudice or bad faith." *Duling v. Gristede's Operating Corp.*, 265 F.R.D. 91, 98 (SDNY 2010) (emphasis in original).

That Drivetrain may have been aware of the facts underlying the proposed amendment earlier does not give rise to an inference of bad faith.  *Randolph Foundation v. Duncan*, No. 00 Civ. 1172, 2002 U.S. Dist. LEXIS 362, 2002 WL 32862, at 3 (S.D.N.Y. Jan. 11, 2002) ("[T]he fact that a party may have had evidence to support a proposed amendment earlier in the litigation does not, by itself, give rise to an inference of bad faith."); *Bodum Holding AG*, 2020 U.S. Dist. LEXIS 192983 at 25 ("Simply alleging that the plaintiff could have moved to amend earlier than [it] did ... is insufficient to demonstrate undue delay.")*; Dilworth v. Goldberg*, 914 F. Supp. 2d 433, 460 (S.D.N.Y. 2012) ("[T]he motion to amend will not be denied by reason of plaintiffs' delay in alleging facts that were previously within their knowledge").

---

[2]    See Avoidance Action Procedures approved by this Court's May 18, 2018 Order Granting SunEdison Litigation Trust's Motion For Order Establishing Procedures Governing Adversary Proceedings Pursuant To sections 502, 547, 548 And 550 Of The Bankruptcy Code.  (Doc. No. 5390).

10

Defendants fail to show that they will be unduly prejudiced if leave to amend is granted. Defendants assert that granting Drivetrain leave to amend "would prejudice Defendants by requiring them to re-brief their pending motion to dismiss." But it is well-established that "delay (and its necessary consequence, litigation expense) does not, without more, constitute undue prejudice." *Pasternack v. Shrader*, 863 F.3d 162, 174 (2d Cir. 2017) ("The denial of leave to amend, based solely on delay and litigation expense, was an abuse of discretion."); *Bodum Holding AG,* 2020 U.S. Dist. LEXIS 192983 at 25 ("Further, the prospect of spending more time, effort, or money on litigation—including through additional discovery and motion practice—does not render an amended complaint unduly prejudicial."; citing *Block v. First Blood Assocs.*, 988 F.2d 344, 351 (2d Cir. 1993) (granting leave where defendants argued prejudice resulted "solely because of the time, effort, and money they expended in litigating this matter.")).

## CONCLUSION

For the foregoing reasons, Drivetrain respectfully requests that the Court grant it leave to file the proposed Amended Complaint.

Dated: New York, New York
February 11, 2021

        KAGEN, CASPERSEN & BOGART PLLC

        /s/ *Joel M. Taylor*
        Joel M. Taylor, Esq.
        Stuart Kagen, Esq.
        757 Third Avenue
        New York, New York 10017
        Telephone:  212-880-2045
        Facsimile:  646-304-7879
        *Attorneys for Drivetrain, LLC*

## CERTIFICATION OF SERVICE

The undersigned hereby certifies that on February 11, 2021, a copy of the foregoing DRIVETRAIN'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Joel M. Taylor