**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| SUNEDISON, INC.,  et al., | ) | Case No. 16-10992 (DSJ) |
| | ) | |
| Debtor. | ) | |

----------------------------------------------------------------

| | | |
|---|---|---|
| DRIVETRAIN, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Adv. Proc. No. 19-01120 (DSJ) |
| | ) | |
| - against - | ) | |
| | ) | |
| EVERSTREAM SOLAR | ) | |
| INFRASTRUCTURE FUND I LP, and | ) | |
| EVERSTREAM SOLAR | ) | |
| INFRASTRUCTURE FUND I GP, LP, | ) | |
| | ) | |
| Defendants. | ) | |

----------------------------------------------------------------

## MEMORANDUM OF DECISION AND ORDER

**A P P E A R A N C E S:**

**KAGEN CASPERSEN & BOGART PLLC**
*Counsel for Drivetrain, LLC*
757 3rd Avenue
20th Floor
New York, NY 10017
By:    Joel M. Taylor, Esq.
       Terri Jane Freedman, Esq.

**DAY PITNEY LLP**
*Counsel for Defendants*
195 Church Street
New Haven, CT
By:    Joshua W. Cohen, Esq.

**DAVID S. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

Drivetrain, LLC ("**Drivetrain**" or "**Plaintiff**"), in its capacity as Trustee of the SunEdison Litigation Trust, on behalf of debtor, EverStream HoldCo Fund I, LLC (the "**Everstream Debtor**"), has moved for leave to file an amended complaint to add a claim for breach of contract (the "**Motion**") [ECF No. 30]. Drivetrain asserts that the proposed amended complaint (the "**Amended Complaint**," at times referenced as the "**PAC**") states a claim for breach of contract under Delaware law, and that this contract claim relates back to claims asserted in the original complaint and is thus timely. [*See* Motion at 3, 5–6.] Defendants, EverStream Solar Infrastructure Fund I LP (the "**Everstream Partnership**") and EverStream Solar Infrastructure Fund I GP LP (the "**Everstream General Partner**" and, together with the Partnership, the "**Defendants**"), oppose Drivetrain's request. [*See* Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Leave to Amend Complaint, ECF No. 31 ("**Opposition**")]. They contend that the proposed amendment is futile given the express language of applicable agreements, and they object that the proposed amendment comes after undue delay and that its allowance would unduly prejudice the Defendants. [*Id.* at 8, 11]. For the following reasons, the Court grants Plaintiff's Motion.

## BACKGROUND

### A. The Everstream Partnership and the Everstream Debtor's Default on Its Investment in the Everstream Partnership

The Everstream Partnership is a Delaware limited liability partnership that was formed to invest in and operate renewable energy assets. [PAC ¶ 16; Motion at 1]. The Everstream General Partner served as the general partner of the Everstream Partnership, and the Everstream Debtor invested as a limited partner. [PAC ¶ 16; Motion at 1]. Pursuant to a Subscription Agreement,

dated February 7, 2013 (the "**Subscription Agreement**"), the Everstream Debtor, which was formed for the purpose of investing in the Everstream Partnership, committed to provide up to $30 million in capital funding to the Everstream Partnership upon a capital call or calls, as provided for in the Limited Partnership Agreement of the EverStream Partnership dated February 7, 2013 (as amended and restated in accordance with its terms, the "**Partnership Agreement**"). [PAC ¶ 18].

The Partnership Agreement provided in relevant part as follows regarding limited partners' obligations to make payments in response to capital calls, and regarding the consequences of a failure to meet those obligations. Each limited partner (including the Everstream Debtor) agreed to fund partnership investments by paying up to the amount of the limited partner's "Capital Commitment," defined as "with respect to any Limited Partner, the aggregate contribution such Limited Partner has agreed to make to the [Everstream] Partnership, whether or not contributed, as may be modified by the express terms of this [Partnership] Agreement." [ECF No. 20-1 ("**Partnership Agreement**") § 1]. These payments were not required immediately upon the effectiveness of the Partnership Agreement but were required to be made in response to "Capital Calls," when such calls were made by the Everstream Partnership. [*See* Partnership Agreement §§ 1, 5.1]. If a limited partner failed to make a required payment in response to a capital call and failed or refused to cure the missed payment following notice, the Everstream General Partner had the authority to designate it as a "Defaulting Partner." [*See id.* § 6.1]. If a Defaulting Partner failed to cure its default by paying its required contribution and any interest accrued because of the delay within ten days after receipt of a "Default Notice," then the Everstream General Partner had the authority to deem that defaulting partner in "Material Default" under the Partnership Agreement. [*See id.*].

3

Upon such a Material Default, the Everstream General Partner was authorized to pursue various remedies "available to the [Everstream] Partnership under this Agreement or at law or in equity[.]" [*Id.* § 6.2]. Section 6.6 of the Partnership Agreement is particularly relevant, providing in part:

> The General Partner may make the changes in the interest of a Defaulting Partner that is in Material Default provided for in . . . Section 6.6.
>
> (a) ***The General Partner may reduce or eliminate the Defaulting Partner's Capital Commitment, Capital Contributions and Uncontributed Capital Commitment to zero*** or by such proportion as the General Partner may elect in its discretion, and ***no Defaulting Partner shall be entitled to any consideration in connection with any such reduction or elimination***. If the Capital Commitment of a Defaulting Partner is reduced, then the Sharing Percentages of the Partners shall be adjusted accordingly with the result that future distributions to the Defaulting Partner pursuant to Section 8.2 will be reduced or eliminated.

(Emphasis added.)  To the extent a defaulting partner's "Sharing Percentage is reduced to zero, then the [Everstream] General Partner may cause the Defaulting Partner's interest in the Partnership to be extinguished." [*Id.* § 6.6(c)].

Between March 2013 and May 2014, the EverStream Debtor made capital call payments to the Everstream Partnership totaling $21,073,368.00, which were directly paid by either SunEdison or debtor NVT LLC ("**NVT**"). [PAC ¶ 20]. In November 2015, the Everstream Partnership issued a capital call notice in the amount of $212,014.00 (the "**November 2015 Capital Call**") which the Everstream Debtor failed to pay. [*Id.* ¶ 21]. In a letter dated February 23, 2016 (the "**February 2016 Letter**"), the Defendants informed the Everstream Debtor that, as a result of its failure to satisfy the November 2015 Capital Call, it was in "Material Default" under the Partnership Agreement and that, accordingly, the Everstream Debtor's partnership interest had been "extinguished for no consideration pursuant to Section 6.6 of the Partnership Agreement."

4

[*Id.* ¶ 22; ECF No. 11 Ex. C]. Plaintiff does not dispute that it was a "Defaulting Partner," nor that its default was "Material," as those terms are used in the Partnership Agreement.

In March 2016, the Defendants informed the Everstream Debtor that its partnership interest could be reinstated, notwithstanding its default, if the Everstream Debtor paid the Everstream Partnership $3,758,523.26 (the "**March 2016 Capital Call**"), the sum of (1) the November 2015 Capital Call, plus accrued default interest and (2) the pro rata amount that the Everstream Debtor would have needed to fund in response to an additional capital call to all of the Everstream Partnership's limited partners in the total amount of $8,337,962.00 if the Everstream Debtor's partnership interest had not been terminated. [PAC ¶ 23]. The Defendants stated that the Everstream Debtor's partnership interest would remain "extinguished for no consideration" unless and until the Everstream Partnership received the full amount of the March 2016 Capital Call. [*Id.* (quoting the March 2016 Capital Call)].

The Everstream Debtor did not make the payment required by the March 2016 Capital Call. The Defendants, in a letter dated April 22, 2016 (the "**April 2016 Letter**"), notified the Everstream Debtor that it would not be reinstated as a limited partner and that its partnership interest, to the extent not extinguished as of February 2016, was being extinguished in exchange for "no consideration." [*Id.* ¶¶ 23–24].

**B. Procedural History**

On April 21, 2016, SunEdison and certain of its affiliates, including NVT, commenced voluntary cases under Chapter 11 of the Bankruptcy Code. [*Id.* ¶ 35]. The Everstream Debtor filed its Chapter 11 case on July 20, 2016. [*See* Bankr. P. No. 16-12058, ECF No. 1].

On April 19, 2019 Plaintiff, on behalf of the Everstream Debtor, filed an adversary proceeding complaint against the Defendants in this Court. [ECF No. 1 (the "**Initial**

5

Complaint")].  Plaintiff's Initial Complaint included two causes of action: a claim for fraudulent transfer pursuant to §§ 548 and 550 of the Bankruptcy Code, and a claim for disallowance of claims pursuant to § 502(d) of the Bankruptcy Code; it did not include a claim for breach of contract.  [*Id.* ¶¶ 35–43].  The Initial Complaint is subject to a motion to dismiss [ECF No. 9] on which, pursuant to a stipulation between the parties dated November 19, 2020 [*see* Motion at 2], briefing has been suspended or delayed pending the Court's ruling on Plaintiff's motion for leave to amend.  Plaintiff now moves for leave to amend its Initial Complaint as reflected in the proposed Amended Complaint that is the subject of this motion.  The proposed Amended Complaint would add a claim for breach of contract, essentially asserting that the Everstream Partnership breached the Partnership Agreement by deeming the Everstream Debtor's prior capital-call payments in excess of $21 million to have been forfeited as a consequence of its failure to honor subsequent capital calls.  [PAC ¶¶ 37–40].

## DISCUSSION

### A.  Applicable Standards and Whether Plaintiff's Breach of Contract Claim Is Futile

Rule 15(a) of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding pursuant to Rule 7015 of the Federal Rules of Bankruptcy Procedure, governs motions for leave to amend pleadings.  When the timing and procedural status limitations that are set forth in Rule 15(a)(1) are met, a party may amend its pleading as a matter of course.  Fed. R. Civ. P. 15(a)(1).  But when a party seeks to amend its pleadings outside of those authorized circumstances, Rule 15(a)(2) requires that the opposing party must consent or the plaintiff must obtain leave of court.  The decision to grant or deny a motion to amend rests in "the sound judicial discretion of the trial court."  *Adelphia Recovery Trust v. FPL Group, Inc. (In re Adelphia Commc'ns Corp.)*,

452 B.R. 484, 489 (Bankr. S.D.N.Y. 2011) (quoting *Evans v. Syracuse City School District*, 704 F.2d 44, 47 (2d Cir. 1983)).

Generally, a court "should freely give leave when justice so requires," but may deny a motion to amend in instances of undue delay, bad faith, dilatory motive, undue prejudice to the opposing party, or futility.  Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962).  The "presence of any one of these factors can be sufficient to deny a motion to amend a complaint." *In re AMR Corp.*, 506 B.R. 368, 382 (Bankr. S.D.N.Y. 2014).  Here, the Defendants assert that the breach of contract claim in the proposed Amended Complaint is futile and that Plaintiff's delay in pleading its breach of contract claim was unwarranted and unduly prejudices the Defendants.  [*See* Opposition at 6–12].

An amendment to a pleading is considered futile "if the proposed claim [cannot] withstand a motion to dismiss" pursuant to Rule 12(b)(6).  *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002).  To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Facial plausibility is achieved when the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," beyond a "sheer possibility that a defendant acted unlawfully." *Iqbal*, 556 U.S. at 677–78; *accord Twombly*, 550 U.S. at 556.  The Second Circuit has explained that the court must determine "whether the well-pleaded factual allegations, assumed to be true, plausibly give rise to an entitlement to relief." *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 679).

In considering such a motion, "courts must consider the complaint in its entirety as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Sec. LLC)*, 2020 WL 401822, at *4 (Bankr. S.D.N.Y. Jan. 23, 2020) ("**Madoff I**") (quoting *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007)).  Such sources include "documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit."  *Madoff I*, 2020 WL 401822 at *4 (citations omitted).  When a complaint cites excerpts of a document, a court may consider other parts of the same document submitted for purposes of a motion to dismiss.  *Id.*; *see also Picard v. Magnify Inc. (In re Bernard L. Madoff Inv. Sec. LLC)*, 583 B.R. 829, 840 (Bankr. S.D.N.Y. 2018) (noting that a complaint is "deemed to include any written instrument attached to it as an exhibit, documents incorporated in it by reference and other documents 'integral' to the complaint") (citations omitted).

Here, the proposed Amended Complaint relies on and/or quotes from the Subscription Agreement, the Partnership Agreement and the February 2016 and April 2016 Letters.  [PAC ¶¶ 37–38].  Further, Drivetrain's Reply Memorandum references various provisions of the Partnership Agreement not cited in the Amended Complaint to support its contention that Section 6.6(a) should be construed to avoid forfeiture of the Everstream Debtor's partnership interests; this further supports the permissibility of considering the Partnership Agreement as a whole in resolving the motion to amend.  [ECF No. 34 ("**Reply**") at 7–8].  Accordingly, the Court concludes that such sources may be considered in evaluating the merits of the Motion.

"In reviewing a motion to dismiss a breach of contract claim pursuant to Rule 12(b)(6), the Court may interpret a contract properly before it, but it must resolve all ambiguities in the contract in the plaintiff's favor." *Oppenheimer & Co. v. Trans Energy, Inc.*, 946 F. Supp. 2d 343, 347 (S.D.N.Y. 2013). Yet a court is "not constrained to accept the allegations of the complaint in respect of the construction of the [a]greement." *Id.* at 347 (internal citations omitted). Rather, "[a] written contract must be interpreted according to the parties' intent, which is 'derived from the plain meaning of the language employed in the agreements.'" *Id.* at 348 (quoting *In re Lehman Bros. Inc.*, 478 B.R. 570, 586–87 (S.D.N.Y. 2012) (internal quotation marks omitted)). In a dispute over the meaning of a contract, the threshold question is whether the contract terms are ambiguous, which is a question of law for the court to decide on a claim-by-claim basis. *Id.* at 348 (internal citations omitted).

The parties' rights and obligations under the Partnership Agreement are governed by Delaware law. [Partnership Agreement § 19.5]. Under Delaware law, courts "give priority to the intention of the parties." *In re Live Primary, LLC*, 626 B.R. 171, 191 (Bankr. S.D.N.Y. 2021) (citations omitted). In discerning the parties' intent, courts look first to the contract's express language. *Id.* (citations omitted). For partnership agreements, it is the "policy of [Delaware statute] to give maximum effect to the principle of freedom of contract and to the enforceability of partnership agreements." 6 Del. C. § 17-1101(c).

It is also the policy of Delaware law that "[f]orfeitures are not favored" and contracts will be construed, where possible, to avoid a forfeiture. *See, e.g.*, *Garrett v. Brown*, No. CIV.A. 8423, 1986 WL 6708, at *8 (Del. Ch. June 13, 1986), *aff'd*, 511 A.2d 1044 (Del. 1986); *Martin v. Hopkins*, No. CIV.A. 05C-04-027, 2006 WL 1915555, at *6 (Del. Super. Ct. June 27, 2006)

("Generally, the law does not favor a forfeiture"). Accordingly, for a contract provision to effect a forfeiture, it must be unambiguous. *See Martin v. Hopkins*, 2006 WL 1915555, at *6.

While "[c]lear and unambiguous language" must be given "its ordinary and usual meaning," *In re Live Primary*, 626 B.R. at 192, ambiguity exists when a contract "is fairly or reasonably susceptible to more than one meaning.'" *See id.* (quoting *HIFN, Inc. v. Intel Corp.*, 2007 WL 2801393, at *9 (Del. Ch. May 2, 2007)). In the Rule 12(b)(6) motion to dismiss context, when a contract's language is ambiguous, "its construction presents a question of fact" precluding dismissal. *Oppenheimer & Co.*, 946 F. Supp. 2d at 349 (internal quotation marks and citations omitted); *accord, e.g.*, *Bayerische Landesbank, N. Y. Branch v. Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 55 (2d Cir. 2012) (explaining that "if a contract is ambiguous as applied to a particular set of facts, a court has insufficient data to dismiss a complaint for failure to state [a] claim" (internal quotation marks and citations omitted)).

"Under Delaware law, the elements of a breach of contract claim are: 1) a contractual obligation; 2) a breach of that obligation by the defendant; and 3) a resulting damage to the plaintiffs." *In re Anthem-Cigna Merger Litig.*, No. CV 2017-0114-JTL, 2020 WL 5106556, at *90 (Del. Ch. Aug. 31, 2020) (citing *WaveDivision Hldgs. v. Millenium Digital Media*, 2010 WL 3706624, *13 (Del. Ch. Sept. 17, 2020)). Drivetrain contends these elements are satisfied as follows: first, under Delaware law a partner expelled pursuant to a partnership agreement, as the Everstream Debtor was, ordinarily is entitled to receive the "fair value" of his partnership interest and is a "contract claimant holding fixed rights." *Hillman v. Hillman*, 910 A.2d 262, 272 (Del. Ch. 2006). [*See* Motion at 3–4; PAC at ¶ 37]. In other words, Drivetrain contends, Delaware law provides a default rule that, unless the parties agree otherwise, a partnership must pay an expelled limited partner the fair value of its partnership interest; that default rule is incorporated into the

Partnership Agreement unless explicitly excluded; and here it was not so excluded.  [*See* Motion at 3–5; PAC ¶¶ 37–38].

Second, Drivetrain further contends, the Defendants breached that obligation by not paying the Everstream Debtor the fair value of its partnership interest in connection with the debtor's expulsion from the partnership.  [Motion at 5; PAC ¶ 39].  Thus, third, the Everstream Debtor contends that it was damaged in an amount equal to the value of its partnership interest as of the date it was removed from the Everstream Partnership.  [Motion at 5; PAC ¶ 40].

Under Delaware law, a partner expelled from the partnership pursuant to the partnership agreement is entitled to receive "fair value for [its] partnership interest" unless the partnership agreement provides otherwise.  *See Hillman*, 910 A.2d at 277.  Thus, here the controlling issue is whether the Partnership Agreement unambiguously states that a partner may be expelled without receiving fair value for its partnership interest.

Article 6 of the Partnership Agreement sets forth the standards and procedures applicable to "Defaulting Partners," such as the Everstream Debtor.  Section 6.2, "Remedies," grants the Everstream General Partner "any and all remedies available to the [Everstream] Partnership under th[e Partnership] Agreement or at law or in equity with respect to any default by a Defaulting Partner."  For example, under Section 6.3, if a "Defaulting Partner" is in "Material Default" under the Partnership Agreement, the other limited partners or the Everstream Partnership may purchase the interest of the defaulting partner.

The parties focus their arguments on Section 6.6 of the Partnership Agreement, which (as noted above) provides, in relevant part:

> The General Partner may make the changes in the interest of a Defaulting Partner that is in Material Default provided for in . . . Section 6.6.

(a)   ***The General Partner may reduce or eliminate the Defaulting Partner's Capital Commitment, Capital Contributions and Uncontributed Capital Commitment to zero*** or by such proportion as the General Partner may elect in its discretion, and ***no Defaulting Partner shall be entitled to any consideration in connection with any such reduction or elimination***.  If the Capital Commitment of a Defaulting Partner is reduced, then the Sharing Percentages of the Partners shall be adjusted accordingly with the result that future distributions to the Defaulting Partner pursuant to Section 8.2 will be reduced or eliminated.

[Partnership Agreement § 6.6(a) (emphasis added)].  Moreover, if a defaulting partner's "Sharing Percentage is reduced to zero, then the [Everstream] General Partner may cause the Defaulting Partner's interest in the Partnership to be extinguished."  [*Id.* § 6.6(c)].

Drivetrain concedes that the Defendants expelled the EverStream Debtor from the Everstream Partnership in accordance with the terms of the Partnership Agreement,[1] and acknowledges that, a result of the Everstream Debtor's default, the Everstream General Partner caused the Everstream Debtor's entire interest in the partnership to be extinguished for no consideration in accordance with Section 6.6(a) of the Partnership Agreement.  [PAC ¶¶ 22–23; Reply at 1–2].  Drivetrain argues, however, that the "consideration" to which Partnership Agreement Section 6.6[2] states Drivetrain is not entitled does not encompass the "fair-value payment" that Drivetrain contends Delaware law requires absent a contrary agreement.  [Reply at 1, 3–9].  Put another way, Drivetrain argues that the provision that "no Defaulting Partner shall be entitled to any consideration in connection with any such reduction or elimination," [Partnership Agreement § 6.6], does not extinguish the fair-value repayment requirement (or negate the policy disfavoring forfeitures) that Delaware law imposes absent agreement of the parties.

Plaintiff contends that the Court should apply the definition of "consideration" contained in Black's Law Dictionary—namely, "[s]omething (such as an act, a forbearance, or a return

---

[1] PAC ¶ 38*; see also* PAC ¶ 25 (noting that the Defendants "extinguish[ed] the Ever[s]tream Debtor's Partnership Interest pursuant to the Partnership Agreement").

[2] As Plaintiff notes, the Partnership Agreement uses, but does not define, the word "consideration."  [*See* Reply at 4].

12

promise) bargained for and received by a promisor from a promisee[.]"  [Reply at 4 (citing

BLACK'S LAW DICTIONARY (8th ed. 2004)].[3]  Plaintiff observes that Delaware courts routinely

"look to dictionaries for assistance in determining a plain meaning of terms which are not defined

in a contract."  [*Id.* at 4 (quoting *Clean Harbors, Inc. v. Union Pac. Corp.,* 2017 WL 5606953 at

*8 (Del. Super. Nov. 15, 2017))].  And, indeed, Delaware courts look to Black's Law Dictionary

for the meaning of terms employed but not defined in a contract,[4] though Black's Law Dictionary

is not the only dictionary or other secondary source so used.[5]

　　　　Further, as Plaintiff emphasizes, the Black's Law Dictionary definition of "consideration"

excludes the performance, or promise to perform, of a pre-existing legal duty, because the

performance of such a duty cannot represent a transfer of something of new or additional value.

[Reply at 4–5 (citing, among many other sources, *Pieroski v. Town of Elsmere*, 1984 Del. Supr.

LEXIS 709 at 11 (Supr. Del. March 26, 1984))].  As noted above, Plaintiff argues that Delaware

law imposes an independent entitlement of defaulting partners who have not agreed otherwise to

receive a "fair-value payment" for their partnership interests—and that this entitlement constitutes

a pre-existing legal duty on the part of the partnership, such that such a payment by the partnership

would not constitute "consideration" and therefore is not excused by the Partnership Agreement.

In other words, under Plaintiff's interpretation of the Partnership Agreement, although the

---

[3] Although Plaintiff cites an older version of Black's Law Dictionary, the applicable language of the definition is identical in the current version.  *See* BLACK'S LAW DICTIONARY (11th ed. 2019).

[4] *See, e.g., In re Energy Transfer Equity, L.P. Unitholder Litig.,* 2018 Del. Ch. LEXIS 156, at *43 (May 17, 2018) (definition of "partnership payment"); *Horton v. Organogenesis Inc.,* 2019 Del. Ch. LEXIS 273, at *10 (July 22, 2019) (definition of "incur"); *Zayo Grp., LLC v. Latisys Holdings, LLC,* 2018 Del. Ch. LEXIS 540, at *24 (Nov. 26, 2018) (definitions of "cancel" and "terminate"); *Julius v. Accurus Aero. Corp.,* 2019 Del. Ch. LEXIS 1343, at *24 (Oct. 31, 2019) (definition of "issue").

[5] *See Lorillard Tobacco Co. v. American Legacy Found.,* 903 A.2d 728, 740 (Del. 2006) (stating that when a "term's definition is not altered . . . it should be construed in accordance with its ordinary dictionary meaning"); *see also, e.g., Northwestern Nat'l Ins. Co. v. Esmark, Inc.,* 672 A.2d 41, 44 (Del. 1996) (applying a definition from the American Heritage Dictionary); *The Cove on Herring Creek Homeowners' Ass'n v. Riggs,* No. Civ.A 02024–S, 2005 WL 1252399 at *1 n.10 (Del. Ch. May 19, 2005) (applying a definition from Webster's Third New International Dictionary); *Hibbert v. Hollywood Park, Inc.,* 457 A.2d 339, 343 n.3 (Del. 1983) (applying a definition from Webster's New International Dictionary and referencing the definition in the American Heritage Dictionary).

Defendants are entitled to expel the Everstream Debtor without paying "any consideration," the Everstream Debtor is nevertheless entitled to receive a fair-value payment which, as a pre-existing legal duty, is not "consideration."

This interpretation of the Partnership Agreement, including its use of "consideration" in Section 6.6(a), is not the only possible one.  In looking to the Partnership Agreement to discern the parties' intent, the Court could, as the Defendants urge and as other courts have done,[6] interpret "consideration" beyond its narrower, technical legal definition to more generally include additional types of payments; indeed, the Defendants' central contention is that this is the only permissible or plausible reading of the agreement.  [*See, e.g.*, Opposition at 8–10; ECF No. 39, Transcript of April 1, 2021 Hearing ("**Hearing Transcript**") at 43:15–25].  Non-specialized dictionaries include definitions that are at least arguably broader.  *See, e.g.*, *Consideration*, AMERICAN HERITAGE DICTIONARY 402 (3d ed. 1992) (among other definitions, "[p]ayment given in exchange for a service rendered; recompense").  And the Defendants may have an argument that the Partnership Agreement makes several references to "consideration" which, taken as a whole, could suggest that Section 6.6(a)'s reference broadly includes any type of payment.[7]  If this second reading were to prevail, then Plaintiff would be entitled to nothing.

As noted, however, where material contractual language is ambiguous, a "question of fact" is presented that precludes dismissal under the Rule 12(b)(6) standard.  *See Oppenheimer & Co.*, 946 F. Supp. 2d at 349; *see also Bayerische Landesbank*, 692 F.3d at 55.  Thus, under the Rule 12(b)(6) or Rule 15 standard, the Court must decide merely whether the Partnership

---

[6] *See Attestor Cap. LLP v. Lehman Bros. Holdings Inc.*, 2019 U.S. Dist. LEXIS 139185 (S.D.N.Y. Aug 16, 2016).

[7] For example, Section 6.9 of the Partnership Agreement provides that, at the election of the General Partner, defaulting limited partners shall "sell, assign, transfer and convey to the transferees designated by the General Partner all or any portion of its interest in the Partnership in exchange for the ***consideration specified in Section 6.3***."  [Section 6.9 of the Partnership Agreement (emphasis added); *see also* Section 6.3 (specifying the price to be paid for the purchase of interest of a defaulting partner).]

Agreement is fairly or reasonably susceptible to more than one interpretation—*i.e.*, whether ambiguity exists. *See In re Live Primary*, 626 B.R. at 192 (quoting *HIFN*, 2007 WL 2801393 at *9). In making this decision, the Court bears in mind the Delaware-law policy that "forfeitures are not favored." *See, e.g.*, *Martin v. Hopkins, supra*. If the Partnership Agreement is ambiguous the Court, resolving any ambiguity in Plaintiff's favor as it is required to do, cannot deny leave to amend on grounds of futility. *See Oppenheimer & Co.*, 946 F. Supp. 2d at 347.

The Court concludes that the meaning of Section 6.6(a) is sufficiently ambiguous to preclude dismissal, such that granting leave to amend would not be futile as a matter of law. First, the first clause of the first sentence of Section 6.6(a) of the Partnership Agreement authorizes the general partner to "reduce or eliminate the Defaulting Partner's Capital Commitment, Capital Contributions, and Uncontributed Capital Commitment to zero or" by a lesser proportion, and the parties agree that the payments by the Everstream Debtor of more than $21 million were "Capital Contributions" as defined in the Partnership Agreement.[8] But the contract's language leaves uncertain what it means to reduce to zero payments that undisputedly have been made. The Defendants argue that such a reduction, along with the elimination of other interests, must signify the full elimination of all of the Everstream Debtor's rights and interest in the Everstream Partnership. But Plaintiff responds that, given the background norm as a matter of Delaware law that partners are entitled to payment of the fair value of their partnership interest, and given the conceptual incongruity of somehow "reduc[ing]" a prior payment that undisputedly occurred to "zero," the only viable reading of this passage is that any such reduction must be accomplished by the general partner repaying the limited partner (that is, the Everstream Debtor) the amount of their

---

[8] The Partnership Agreement defines "Capital Contribution" to mean, "as to each Partner, the amount of cash actually contributed to the Partnership by such Partner pursuant to any Capital Call, subject to Sections 4.6, 5.4, 5.8 and 6.1." [Partnership Agreement § 1].

prior capital contributions (net of possible penalties or other awards to the Defendants) so that the limited partner's net contributions are brought to zero.  [Hearing Transcript at 13–15].  These two competing interpretations are plausible enough that ambiguity is present.  Particularly given the availability of other ways to more clearly state the meaning the Defendants advance (such as, "in the event of a Material Default the limited partner's interest shall be forfeited with no compensation or return of any capital contributions that the limited partner made before the default occurred"), the words employed do not unambiguously compel the outcome the Defendants urge.  The Defendants' contentions to the contrary are further undermined by their inability to cite any case in which a defaulting limited partner's interest was eliminated based on contractual language like that at issue here.  [*Id.* at 39].

Second, the meaning of "consideration" in the second clause of the first sentence of Section 6.6(a) is likewise capable of multiple meanings, as the parties' arguments reveal.  As noted, Plaintiff argues that the legal definition of consideration as payment made in exchange for new value applies, and that, applying this definition, the Partnership Agreement's provision that no consideration is due upon default does not eliminate the obligation to pay fair value for the defaulting partner's partnership interest because that obligation was a pre-existing duty under Delaware law.  The Defendants, by contrast, urge a more general definition of "consideration" as meaning a payment of any kind at all.  But even the Defendants, in the course of advancing their preferred "broader definition of the word 'consideration,'" contrasted it to the definition advanced by Plaintiff and acknowledged that the Defendants' preferred definition yields "a very different reading of this provision."  [*Id.* at 32].  While the Defendants argue that their reading "is much more consistent with the purpose of the provision," [*id.*], their acknowledgment of another possible

16

reading, which the Court finds plausible, reinforces the Court's conclusion that ambiguity is present.

Recognizing the legal sufficiency at the pleading stage of Plaintiff's position does not, of course, preclude further litigation regarding the contract's proper interpretation or of Plaintiff's assertion that the Everstream Debtor necessarily is entitled to a full fair-value payment equal to the value of its partnership interest.  [*See* PAC ¶¶ 40, 49(a)].  At argument on the Motion, the Defendants persuasively identified strong policy reasons that a partnership agreement should not be read to allow a partner to default without any penalty.  [*See* Hearing Transcript at 35–37].  And, indeed, the Partnership Agreement explicitly provides for other remedies short of complete forfeiture of an investor's full interest in cases of default, including payment under Section 6.7 and other partners' possible *purchase* of the partnership interest under Section 6.3.  The availability of these less draconian remedies is not affected by today's ruling.

### B. Whether Drivetrain Unduly Delayed Seeking Leave to Amend, Prejudicing the Defendants

The Court's conclusion that amendment would not be futile does not fully resolve the motion for leave to amend.  As the Defendants also observe, a court should not grant leave to amend a complaint if there would be prejudice to the opposing party or there has been undue delay in bringing the motion.  [Opposition at 11–12]; *see In re AMR Corp.*, 506 B.R. at 382.  In this Circuit, courts generally allow a party to amend its pleadings absent a showing by the nonmovant of prejudice or bad faith.  *See In re AMR Corp.*, 506 B.R. at 382 (citing *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 725 (2d Cir. 2010)).  Mere delay alone does not preclude granting leave to amend.  *See Bodum Holding AG v. Starbucks Corp.*, No. 19 CIV. 4280 (ER), 2020 WL 6135714, at *9 (S.D.N.Y. Oct. 16, 2020) (citations omitted).

"Although *some* explanation must be provided to excuse a delay" in amending a pleading, even "vague or 'thin' reasons are sufficient, in the absence of prejudice or bad faith." *Duling v. Gristede's Operating Corp.,* 265 F.R.D. 91, 97–8 (S.D.N.Y. 2010) (internal citations omitted). That a party could have moved to amend its complaint earlier than it did is insufficient to establish undue delay. *See Bodum*, 2020 WL 6135714, at *9. "Similarly, a court will not deny a motion to amend simply because a plaintiff now alleges facts that were previously within its knowledge." *Id.* (citing *Dilworth v. Goldberg*, 914 F. Supp. 2d 433, 460 (S.D.N.Y. 2012) (quotation marks omitted)). Further, that the non-moving party must spend "more time, effort, or money on the litigation—including through additional discovery and motion practice—does not render an amended complaint unduly prejudicial." *Id.* (citing *Agerbrink v. Model Serv. LLC*, 155 F. Supp. 3d 448, 455 (S.D.N.Y. 2016)).

The Defendants urge that Plaintiff unreasonably delayed raising its breach of contract claim to the Defendants' prejudice, and that leave to amend should therefore be denied. [Opposition at 11–12]. Specifically, the Defendants argue, first, that the delay is unwarranted because Drivetrain knew all facts relevant to the breach of contract claim when the Initial Complaint was filed and therefore there is no reason Drivetrain could not have asserted its breach of contract theory in the Initial Complaint. [*Id.* at 12]. Second, the Defendants contend, granting leave to amend would prejudice the Defendants "by requiring them to re-brief their pending motion to dismiss." [*Id*].

Plaintiff responds that the seeming delay resulted from and is justified by (1) this Court's entry of a stay of this litigation, [*see* Bankr. P. No. 16-10992; ECF No. 5390 (May 18, 2018) (the "**Avoidance Action Procedures**")], and (2) the fact that Drivetrain changed attorneys after the case was filed and should not be penalized for the resulting discontinuity. [Reply at 9–10].

18

Moreover, Plaintiff argues, the prejudice the Defendants assert would result from allowing the amendment does not suffice to warrant dismissal.  [Reply at 11].

The Court concludes that there was not undue delay in bringing the Motion, and that granting leave to amend the Initial Complaint will not unduly prejudice the Defendants.  Although the motion for leave to amend was not filed until twenty months after Drivetrain filed its Initial Complaint, this proceeding was stayed for a significant time pursuant to the Avoidance Action Procedures,[9] and briefing on the Defendants' motion to dismiss has been stayed pursuant to a stipulation entered into by the parties on November 19, 2020.  [Motion at 2; Opposition at 6].  And, because a motion to dismiss was filed and has remained pending, the case has never progressed to formal discovery.  [Motion at 2].  The Defendants do contend that, "[c]ontrary to Plaintiff's contention that 'no discovery has been taken in connection with this action' (Mot[ion] at 2), the Defendants have produced thousands of documents concerning Everstream Debtor's claims in this action."  [Opposition at 5].  This appears, however, to refer either to Rule 2004 pre-litigation discovery referenced at oral argument, [*see* Hearing Transcript at 45–46], or to informal exchanges of information in connection with the parties' unsuccessful mediation process, as no answer has been filed and no formal discovery schedule has been approved by the Court.  Even accepting the Defendants' assertion that "the parties engaged in a lengthy mediation process *premised entirely on the claims asserted in the original Complaint,*" [*Id.* at 12 (emphasis added)], it appears that whatever information has been exchanged can be considered as an efficient course of formal discovery is crafted to permit the case's adjudication now that mediation has failed.

---

[9] The Avoidance Action Procedures provide, in relevant part, that "[a]ny Defendant may file a dispositive motion," including those under Rule 12(b)(6), but that, "if such dispositive motion is filed before mediation is concluded, the [SunEdison Litigation] Trust's time to respond to such dispositive motion is extended until 30 days after the filing of a Mediator's Report stating that the mediation has concluded and a settlement has not been reached, or such other time to which the parties mutually agree."  [Exhibit 1, ¶ F].

The Defendants' asserted prejudice—that they would be required to re-brief their motion to dismiss—is limited as the Defendants can simply file a supplemental memorandum in support of their existing motion to the extent they think appropriate after today's ruling, which is already informed by the parties' briefing and decided under the Rule 12(b)(6) standard. And, in any event, the imposition of that limited additional burden is insufficient under the circumstances to justify denying leave to amend. *See Bodum*, 2020 WL 6135714, at *9 (the prospect of further expenditure of resources on litigation, including additional discovery and motion practice, does not render an amended complaint unduly prejudicial such that leave to amend should be denied). And the delay, while regrettable, is not excessive in the circumstances,[10] has not been shown to result from bad faith or blameworthy conduct of Plaintiff and its counsel, and, in any event, would not alone be sufficient to justify denying leave to amend in the face of a complaint that states a claim that survives review under the Rule 12(b)(6) standard of review.

## CONCLUSION

For the foregoing reasons, the Court grants the Motion. Plaintiff shall settle an order on five business days' notice. The proposed order must be submitted by filing a notice of the proposed order on the Case Management/Electronic Case Filing docket, with a copy of the proposed order attached as an exhibit to the notice. A copy of the notice and proposed order shall also be served upon opposing counsel. The parties are encouraged to attempt to reach agreement on the form of the proposed order. The parties also shall confer regarding an appropriate schedule for next steps

---

[10] Motions for leave to amend have been granted after far longer than the twenty months at issue here. *See Richardson Greenshields Sec., Inc. v. Lau*, 825 F.2d 647, 653 n.6 (2d Cir. 1987) (collecting cases where courts granted to leave to amend after delays of three years or more). Indeed, complaints can be deemed amended as late as trial. *See* Fed. R. Civ. P. 15(b).

in the litigation and shall contact chambers to schedule a case management conference to be held

after they have so conferred.


IT IS SO ORDERED.


Dated: New York, New York
     July 27, 2021

*s/ David S. Jones*
_____
HONORABLE DAVID S. JONES
UNITED STATES BANKRUPTCY JUDGE