KAGEN, CASPERSEN & BOGART PLLC
757 Third Avenue
New York, New York 10017
Telephone: 212-880-2045
Facsimile: 646-304-7879
*Attorneys for Drivetrain, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| SUNEDISON, INC., *et al.*, | Case No. 16-10992 (DSJ) |
| Reorganized Debtors.[1] | |
| DRIVETRAIN, LLC, IN ITS CAPACITY AS TRUSTEE OF THE SUNEDISON LITIGATION TRUST, | |
| Plaintiff, | Adv. Pro. No. 19-01120 (DSJ) |
| – against – | |
| EVERSTREAM SOLAR INFRASTRUCTURE FUND I LP and EVERSTREAM SOLAR INFRASTRUCTURE FUND I GP LP, | |
| Defendants. | |

---

[1] The Reorganized Debtors in these chapter 11 cases, along with the last four digits of each Reorganized Debtor's tax identification number, are: SunEdison, Inc. (5767); SunEdison DG, LLC (N/A); SUNE Wind Holdings, Inc. (2144); SUNE Hawaii Solar Holdings, LLC (0994); First Wind Solar Portfolio, LLC (5014); First Wind California Holdings, LLC (7697); SunEdison Holdings Corporation (8669); SunEdison Utility Holdings, Inc. (6443); SunEdison International, Inc. (4551); SUNE ML 1, LLC (3132); MEMC Pasadena, Inc. (5238); Solaicx (1969); SunEdison Contracting, LLC (3819); NVT, LLC (5370); NVT Licenses, LLC (5445); Team-Solar, Inc. (7782); SunEdison Canada, LLC (6287); Enflex Corporation (5515); Fotowatio Renewable Ventures, Inc. (1788); Silver Ridge Power Holdings, LLC (5886); SunEdison International, LLC (1567); Sun Edison LLC (1450); SunEdison Products Singapore Pte. Ltd. (7373); SunEdison Residential Services, LLC (5787); PVT Solar, Inc. (3308); SEV Merger Sub Inc. (N/A); Sunflower Renewable Holdings 1, LLC (6273); Blue Sky West Capital, LLC (7962); First Wind Oakfield Portfolio, LLC (3711); First Wind Panhandle Holdings III, LLC (4238); DSP Renewables, LLC (5513); Hancock Renewables Holdings, LLC (N/A); EverStream HoldCo Fund I, LLC (9564); Buckthorn Renewables Holdings, LLC (7616); Greenmountain Wind Holdings, LLC (N/A); Rattlesnake Flat Holdings, LLC (N/A); Somerset Wind Holdings, LLC (N/A); SunE Waiawa Holdings, LLC (9757); SunE Minnesota Holdings, LLC (8926); SunE MN Development Holdings, LLC (5388); SunE MN Development, LLC (8669); Terraform Private Holdings, LLC (5993); Hudson Energy Solar Corporation (3557); SunE REIT-D PR, LLC (5519); SunEdison Products, LLC (4445); SunEdison International Construction, LLC (9605); Vaughn Wind, LLC (4825); Maine Wind Holdings, LLC (1344); First Wind Energy, LLC (2171); First Wind Holdings, LLC (6257); and EchoFirst Finance Co., LLC (1607).

**FIRST AMENDED COMPLAINT**

Drivetrain, LLC, in its capacity as Trustee for the SunEdison Litigation Trust ("Plaintiff"), alleges the following against Defendant EverStream Solar Infrastructure Fund I LP ("EverStream Partnership") and Defendant EverStream Solar Infrastructure Fund Fund I GP LP (the "General Partner," and together with EverStream Partnership, "Defendants"):

**NATURE OF THE CASE**

1. This is an action for breach of contract, and one brought under sections 502, 548, and 550 of title 11 of United States Code (the "Bankruptcy Code") to (i) avoid and recover, as a fraudulent transfer, a transfer made to or for the benefit of Defendants within two years before the date that debtor EverStream HoldCo Fund I, LLC ("EverStream Debtor") filed its chapter 11 petition, and (ii) disallow any and all claims asserted by Defendants against EverStream Debtor.

2. Beginning on April 21, 2016, the above-captioned debtors (each a "Debtor," and, collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "Court"). EverStream Debtor filed its chapter 11 petition on July 20, 2016 (the "Petition Date").

3. On or before February 23, 2016, EverStream Debtor was a limited partner of EverStream Partnership. Between March 2013 and May 2014, EverStream Debtor made capital call payments to EverStream Partnership totaling $21,073,368. On February 23, 2016, Defendants stripped EverStream Debtor of its more than $21 million investment by extinguishing EverStream Debtor's entire interest in the EverStream Partnership (the "Partnership Interest") without compensation (the "Transfer") after EverStream Debtor failed to fund its share of a capital call by EverStream Partnership.

2

4. Defendants' failure to pay EverStream Debtor the fair value of its Partnership Interest violated Delaware General Corporations Law and is actionable as a breach of contract.

5. The Transfer was made at a time when EverStream Debtor was insolvent and/or undercapitalized, and EverStream Debtor received no consideration, let alone reasonably equivalent value, in exchange for its Partnership Interest. Plaintiff, therefore, seeks entry of a judgment against Defendants (i) avoiding the Transfer as a constructive fraudulent transfer (under section 548(a)(1)(B) of the Bankruptcy Code) and (ii) directing Defendants to return the value of the Partnership Interest to Plaintiff (under section 550(a)(1) of the Bankruptcy Code), together with interest from the date of the Transfer until full payment is made to Plaintiff, and the costs and expenses of this action.

6. This Complaint is not intended to be, nor should it be construed as, a waiver of Plaintiff's right to object to any proof of claim filed by or on behalf of Defendants for any reason, including under section 502 of the Bankruptcy Code, and such rights are expressly reserved. Notwithstanding this reservation of rights, certain relief under section 502 of the Bankruptcy Code is sought by Plaintiff herein, as further stated below.

## **JURISDICTION AND VENUE**

7. The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334.

8. This adversary proceeding is brought under Rule 7001, *et seq.* of the Federal Rules of Bankruptcy Procedure, and sections 502(d), 548, and 550 of the Bankruptcy Code and Delaware common law. Plaintiff consents to the entry of final orders or judgements by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgements consistent with Article III of the United States Constitution.

3

9. Venue in this Court is proper pursuant to 28 U.S.C. § 1409 as this adversary proceeding arises under and in connection with cases under the Bankruptcy Code that are pending in this Court.

10. This is a core proceeding as defined by 28 U.S.C. § 157(b)(2)(A), (B), (H) and (O).

11. On April 18, 2018, Plaintiff and Defendants entered into a Tolling and Forbearance Agreement in which they agreed to toll any applicable statute of limitations, statute of repose, or any other time-related defense that might exist (the "Tolling Agreement"), which Tolling Agreement expired on April 18, 2019. As a result of the Tolling Agreement, the Causes of Action asserted by Plaintiff in this Complaint are timely, including under 11 U.S.C. § 546(a), and 10 Del. C. § 8106.

## PARTIES

12. On or before April 21, 2016, debtor SunEdison, Inc. ("SunEdison") was a renewable energy development company that developed, owned, and operated renewable energy power plants. As of April 21, 2016, SunEdison was the ultimate parent company of the Debtors, including EverStream Debtor, and many non-Debtor affiliates.

13. Upon information and belief, EverStream Debtor was formed on January 10, 2013, was wholly owned by debtor Sun Edison LLC, and had no operations other than its investment in EverStream Partner.

14. On March 28, 2017, the Debtors filed the *Joint Plan of Reorganization of SunEdison, Inc. and its Debtor Affiliates* [Docket No. 2671] (as amended from time to time, the "Plan"). On July 28, 2017, the Court entered the *Findings of Facts, Conclusions of Law and Order Confirming Second Amended Plan of Reorganization of SunEdison, Inc. and its Debtor Affiliates* [Docket No. 3735] (the "Confirmation Order"), thereby approving the Plan with

4

respect to all of the Debtors other than EverStream Debtor, and the GUC/Litigation Trust Agreement (the "Litigation Trust Agreement"). On December 29, 2017, the Plan became effective [Docket No. 4495] (the "Effective Date").

15. On the Effective Date, all of the Debtors' rights, title, and interests in the GUC/Litigation Trust Causes of Action (as defined in the Plan) were transferred from the Debtors' estates to Plaintiff under the Plan. Under the Plan, Plaintiff is authorized, as the representative of the Debtors' estates, to pursue the GUC/Litigation Trust Causes of Action, including the Causes of Action asserted herein.

16. Upon information and belief, EverStream Partnership was formed on or around February 7, 2013 as a Delaware limited partnership to invest directly or indirectly, through one or more subsidiaries, in the alternative energy industry, both solar and natural gas. Upon information and belief, the General Partner was the sole general partner of EverStream Partnership, and EverStream Energy Capital Management, LLC ("EECM"), an affiliate of the General Partner, acted as EverStream Partnership's investment manager until its investment advisory business transferred to EverStream Energy Capital Advisers, LLC ("EECA"), another affiliate of the General Partner, which then became Defendant's investment manager (EECM or EECA, as applicable, in their capacity as investment manager to EverStream Partnership, the "Manager").

17. Plaintiff retains the right to enforce, sue on, settle, or compromise all causes of action belonging to Plaintiff, including claims under sections 502(d), 547, 548 and 550 of the Bankruptcy Code.

**FACTUAL BACKGROUND**

A.    **The Transfer**

18.    EverStream Debtor was formed for the purpose of investing in EverStream Partnership. Pursuant to a Subscription Agreement, dated February 7, 2013 (the "Subscription Agreement"), EverStream Debtor committed to provide up to $30 million of capital funding to EverStream Partnership upon a Capital Call, as defined in that certain Limited Partnership Agreement of EverStream Partnership, dated February 7, 2013 (as amended and restated from time to time, the "Partnership Agreement").

19.    Consistent with its limited and specific purpose, EverStream Debtor's operations were streamlined. Rather than employ its own staff, it shared common management with other SunEdison affiliates, including SunEdison itself, and its operational needs were carried out by employees from other SunEdison affiliates. In addition, upon information and belief, EverStream Debtor did not maintain any bank accounts. Instead, its financial obligations were satisfied with payments from other SunEdison affiliates. Accordingly, although SunEdison largely maintained books and records on a legal entity basis, EverStream Debtor was not separately included in SunEdison's financial reporting structure but, rather, was recorded as an asset of Sun Edison LLC, the sole member and parent company of EverStream Debtor.

20.    Between March 2013 and May 2014, EverStream Debtor made Capital Call payments to EverStream Partnership totaling $21,073,368. As set forth in the table below, each of the foregoing Capital Call payments were paid directly to EverStream Partnership by SunEdison or debtor NVT LLC:

6

| Date | Amount | Paying Entity |
|---|---|---|
| March 29, 2013 | $10,000,000 | NVT LLC |
| June 27, 2013 | $4,000,000 | NVT LLC |
| March 14, 2014 | $1,968,614 | SunEdison, Inc. |
| April 8, 2014 | $1,038,084 | SunEdison, Inc. |
| May 28, 2014 | $4,066,670 | SunEdison, Inc. |

21. On or about November 17, 2015, EverStream Partnership issued another Capital Call notice, of which EverStream Debtor's share was $212,014 (the "November 2015 Capital Call"). EverStream Debtor did not fund its share of the November 2015 Capital Call.

22. By letter dated February 23, 2016, Defendants notified EverStream Debtor that, as a result of its failure to fulfill the November 2015 Capital Call, it was in Material Default under the Partnership Agreement and its Partnership Interest was being extinguished in exchange for "no consideration."

23. On or about March 17, 2016, Defendants offered to reinstate EverStream Debtor's Partnership Interest if it made a payment to EverStream Partnership in the amount of $3,758,523.26, which amount represented the sum of (a) the November 2015 Capital Call, together with the default interest accrued thereon under the Partnership Agreement, and (b) the pro rata amount EverStream Debtor would have needed to fund in response to an additional Capital Call for $8,337,962 if its Partnership Interest had not previously been terminated in exchange for no consideration ((a) and (b) together, the "March 2016 Capital Call"). In connection with the March 2016 Capital Call, Defendants advised that EverStream Debtor's Partnership Interest "remained extinguished for no consideration" until EverStream Partnership received the full amount of the March 2016 Capital Call. EverStream Debtor did not fund the March 2016 Capital Call.

24. By letter dated April 22, 2016, the General Partner notified EverStream Debtor that, as a result of its failure to fulfill the March 2016 Capital Call, it was not being

7

reinstated as a limited partner in EverStream Partnership and its Partnership Interest in EverStream Partnership, if not already extinguished on February 23, 2016, was being extinguished in exchange for "no consideration."

25. In addition to extinguishing the EverStream Debtor's Partnership Interest pursuant to the Partnership Agreement, Defendants indicated an intention to continue the Partnership Agreement in effect by, among other things, demanding that EverStream Debtor perform under the Partnership Agreement by (i) paying interest owing on unmet capital calls, pursuant to section 6.1 of the Partnership Agreement, and (ii) making payments to the EverStream Partnership for any damages or liabilities (including attorneys' fees) to which the Partnership may be subject as a result of the EverStream Debtor's default, pursuant to section 6.2 of the Partnership Agreement. Defendants also expressly reserved all rights under the Partnership Agreement, including the General Partner's right to execute, acknowledge, swear to or file any certificate, filing or other instrument pursuant to the irrevocable power of attorney previously granted by the EverStream Debtor, pursuant to section 19.2 of the Partnership Agreement.

26. Upon information and belief, the Transfer provided a windfall to other members of EverStream Partnership, including the General Partner.

B. **Events Leading to the Debtors' Financial Collapse**

27. Beginning in May 2015, the Debtors announced a series of planned acquisitions (the "Planned Acquisitions") that gave rise to billions of dollars of funding commitments, which were layered on top of the more than $10 billion in debt that SunEdison was carrying at the end of the second quarter of 2015. In particular, in May 2015, the Debtors announced an acquisition of South American renewable energy firm Latin America Power

8

("LAP") for approximately $700 million. Then, in July 2015, the Debtors announced an agreement to purchase (a) twelve hydroelectric and wind projects in Brazil for approximately $4 billion from Renova Energia, S.A. ("Renova"), and (b) $250 million in securities of Renova from a third party. Finally, also in July 2015, the Debtors announced an agreement to purchase residential rooftop solar power provider Vivint Solar ("Vivint") for $2.2 billion. None of these transactions ultimately was consummated.

28.  Shareholders reacted negatively to the Debtors' acquisition plans. Indeed, between July 15, 2015 and August 31, 2015, SunEdison's stock value dropped 70%, while the stock values of companies in its peer group dropped just 10% to 15%. Thus, the drop in SunEdison's stock price was not attributable merely to market conditions but, rather, was due to the Debtors' financial performance and capital structure.

29.  In early August 2015, just weeks after announcing the Vivint transaction, the Debtors sought to raise $300 million in much-needed capital through an initial public offering ("IPO") of shares of Terraform Global, Inc. ("Global"). However, the IPO failed and the Debtors were forced to contribute $30 million to fund the IPO shortfall. Moreover, the IPO saddled the Debtors with ongoing post-IPO financial and operational support obligations. The failed IPO furthered the rapid deterioration in the Debtors' market capitalization and, as of late August 2015, several of SunEdison's debt issuances were trading substantially below par (65-75%).

30.  The market also punished the share price of SunEdison's "yieldco" subsidiary Terraform Power, Inc. ("TERP"), which in turn led to further deterioration in the Debtors' liquidity position. In particular, in late July or early August 2015, additional funding requirements arose in connection with margin call requirements on a $400 million loan

9

agreement tied to the value of TERP shares, which had decreased in value by approximately 25% in July 2015. In response to these margin calls, the Debtors were required to deposit $152 million into an escrow account as collateral during the third quarter of 2015, and then an additional $91 million in October 2015.

31. SunEdison's liquidity decreased in the third quarter of 2015 by approximately $200 million. Specifically, SunEdison's "free" cash (excluding TERP and Global) declined from $461 million (as of June 30, 2015) to $308 million (as of September 30, 2015), and its availability under its first lien credit facility declined from $84 million (as of June 30, 2015) to $34 million (as of September 30, 2015). As a result, SunEdison's remaining cash was barely sufficient to cover its quarterly cash "burn" of $250-300 million required to fund certain project development costs (pre-construction) and corporate overhead expenses. There was no cash left to fulfill other obligations, including those arising in connection with the Planned Acquisitions, or other commitments by the Debtors. For instance, after SunEdison failed to make a $355 million upfront cash payment in late September in connection with the LAP transaction, the deal fell apart and LAP shareholders sued SunEdison for its failure to close the transaction.

32. In short, by at least September 1, 2015—and, indeed, well before that—SunEdison and its affiliated Debtors were insolvent and/or were no longer able to pay their debts as they came due, and had entered into transactions (*i.e.,* the Planned Acquisitions) that they had no ability to consummate. Because EverStream Debtor relied on SunEdison and other SunEdison affiliates to meet its financial obligations as they came due, it too became insolvent and/or no longer able to pay its debts as they came due, as is evidenced by its inability to fund its share of the November 2015 Capital Call or the March 2016 Capital Call.

33. It was apparent to Defendants, or should have been apparent to Defendants, well before the Transfer that EverStream Debtor was a special purpose entity with no operations other than its investment in EverStream Partnership and that EverStream Debtor relied on SunEdison and other SunEdison affiliates to satisfy its day-to-day operations and financial obligations. EverStream Debtor informed Defendants as early as the date of entry into the Subscription Agreement that EverStream Debtor was formed for the purpose of investing in EverStream Partnership. In addition, all Capital Calls prior to the November 2015 Capital Call were paid directly by SunEdison or its affiliate, NVT, LLC. As such, Defendants interfaced directly with SunEdison management in regards to EverStream Debtor's Partnership Interest. Further, two members of EverStream Partnership's Manager and/or the parent company of EverStream Partnership's Manager—namely, Carlos Domenech and Francisco Perez—served in executive-level positions at SunEdison and/or its affiliates after EverStream Debtor's formation.

34. At the very least, EverStream Debtor was insolvent on a balance sheet basis as a result of the Transfer, if not well before then. EverStream Debtor's sole asset was its Partnership Interest in EverStream Partnership. After being stripped of its Partnership Interest by Defendants, EverStream Debtor lacked any assets, much less any free cash, to fulfill its outstanding financial commitments, including the November 2015 Capital Call and/or the March 2016 Capital Call.

35. On April 21, 2016, SunEdison and certain of its affiliates, including NVT, LLC and SunEdison, LLC, commenced voluntary cases under chapter 11 of the Bankruptcy Code in this Court. EverStream Debtor filed its chapter 11 case in this Court on July 20, 2016. As set forth in the Schedules of Assets and Liabilities filed in connection with EverStream Debtor's chapter 11 case, EverStream Debtor held no assets as of the Petition Date.

36.     During the course of this proceeding, Plaintiff may learn (through discovery or otherwise) of additional transfers of interests of the Debtors in property made to Defendants that may be recoverable under, without limitation, sections 544, 547 and/or 548 of the Bankruptcy Code, or sections 273, 274, 275, 278 and/or 279 of the New York Debtor and Creditor Law, including any transfers of an interest of the Debtors in property made to or for the benefit of Defendants during the ninety (90) days preceding the Petition Date.  It is Plaintiff's intention to avoid and recover all such transfers made by the Debtors.  Plaintiff reserves the right to amend this Complaint to include: (i) further information regarding the Transfer; (ii) additional transfers; (iii) modifications of and/or revisions to Defendants' names; (iv) additional defendants; and/or (v) additional causes of action (collectively, the "Amendments") that may become known to Plaintiff at any time during this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to this Complaint.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
(Breach of Contract)

37.     Under Delaware law, a partner that is expelled pursuant to a partnership agreement is entitled to receive fair value for its partnership interest and becomes a contract claimant holding fixed rights to receive the fair value of its partnership interest as of the date it was removed.

38.     Defendants expelled Plaintiff from the EverStream Partnership pursuant to the Partnership Agreement.

39.     Defendants did not pay Plaintiff fair value for its partnership interest.

40. Plaintiff was damaged in an amount equal to the value of its partnership interest as of the date it was removed from the EverStream Partnership, which is approximately $21 million.

### SECOND CAUSE OF ACTION
### (Pursuant to 11 U.S.C. § 548(a)(1)(B) & 550(a)(1))

41. Plaintiff repeats, realleges, and incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth at length herein.

42. The Bankruptcy Code provides that a debtor in possession may avoid any transfer of an interest of the debtor in property or any obligation incurred on or within two years of the filing of the petition if the debtor (i) received less than reasonably equivalent value in exchange for such transfer or obligation and (ii) was (I) insolvent on the date such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation or (II) engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor constituted an unreasonably small capital. 11 U.S.C. § 548(a)(1)(B).

43. Immediately prior to the Transfer, EverStream Debtor held a property interest in the Partnership Interest that was the subject of the Transfer. Accordingly, the Transfer was a transfer of an interest of EverStream Debtor in property.

44. The Transfer took place as early as February 23, 2016, but no later than April 22, 2016, which was within the two-year period preceding the Petition Date.

45. EverStream Debtor did not receive any consideration, let alone reasonably equivalent value, in exchange for the termination of its Partnership Interest; and it was:

    a.    insolvent on the date of the Transfer or became insolvent as a result of the Transfer; or

      b.      engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with EverStream Debtor following the Transfer constituted unreasonably small capital.

46.      To the extent that the Transfer is avoided, the value of the Partnership Interest may be recovered from Defendants under section 550(a)(1) of the Bankruptcy Code.

### THIRD CAUSE OF ACTION
**(Disallowance of Claims)**

47.      Plaintiff repeats, realleges, and incorporates by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth at length herein.

48.      Defendants are either the recipient of the Transfer, or the entities for whose benefit such Transfer was made, which is recoverable under sections 548 and 550 of the Bankruptcy Code, and Defendants have not returned the Transfer to EverStream Debtor or Plaintiff.

49.      Based upon the foregoing, under section 502(d) of the Bankruptcy Code, the claims, if any, asserted by or on behalf of Defendants against EverStream Debtor (collectively, the "Claims") must be disallowed because Defendants have not paid or surrendered the Transfer to Plaintiff.

WHEREFORE, Plaintiff prays that the Court enter a judgment against Defendants:

      a.      On Plaintiff's First Cause of Action, in favor of Plaintiff and against Defendants in an amount not less than the fair value of the Partnership Interest (i.e. $21 million), together with interest from the date of the Transfer until full payment is made to Plaintiff and the costs and expenses of this action.

        b.      On Plaintiff's Second Cause of Action, in favor of Plaintiff and against Defendants in an amount not less than the value of the Partnership Interest (i.e. $21 million), together with interest from the date of the Transfer until full payment is made to Plaintiff and the costs and expenses of this action; and directing Defendants to turn over such sum to Plaintiff under sections 548(a)(1)(B) and 550(a) of the Bankruptcy Code;

        c.      On Plaintiff's Third Cause of Action, in favor of Plaintiff and against Defendants disallowing the Claims under section 502(d) of the Bankruptcy Code unless and until full payment of the value of the Partnership Interest (i.e. $21 million) is turned over to Plaintiff; and

        d.      Granting such other and further relief as the Court may deem just and proper.

Dated: New York, New York
       August 25, 2021

                      KAGEN, CASPERSEN & BOGART PLLC

                      */s/ Joel Taylor*
                      Joel M. Taylor
                      757 Third Avenue
                      New York, New York 10017
                      Telephone: 212-880-2045
                      Facsimile: 646-304-7879
                      *Attorneys for Drivetrain, LLC*

## CERTIFICATE OF SERVICE

      I hereby certify that on August 25, 2021, I electronically filed the foregoing document with the clerk of the Court using the ECF system. The ECF system will send notification of the filing to all attorneys of record.

s/ *Joel Taylor*
Joel Taylor
