**UNITED STATES BANKRUPTCY COURT**      <u>**FOR PUBLICATION**</u>
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------

| | |
|---|---|
| In re: ) | |
| ) | |
| ) | Chapter 11 |
|     SUNEDISON, INC., et al., ) | Case No. 16-10992 (DSJ) |
| ) | |
|                     Debtor. ) | |

------------------------------------------------------------

| | |
|---|---|
| ) | |
| DRIVETRAIN, LLC, ) | |
| ) | |
|                     Plaintiff, ) | Adv. Proc. No. 19-01120 (DSJ) |
| ) | |
|     - against - ) | |
| ) | |
| EVERSTREAM SOLAR ) | |
| INFRASTRUCTURE FUND I LP, and ) | |
| EVERSTREAM SOLAR ) | |
| INFRASTRUCTURE FUND I GP, LP, ) | |
| ) | |
|                     Defendants. ) | |
| ) | |

------------------------------------------------------------

# MEMORANDUM OF DECISION AND ORDER

**A P E A R A N C E S:**

**KAGEN CASPERSEN & BOGART PLLC**
*Counsel for Drivetrain, LLC*
757 3rd Avenue
20th Floor
New York, NY 10017
By:    Joel M. Taylor, Esq.

**DAY PITNEY LLP**
*Counsel for Defendants*
195 Church Street
New Haven, CT
By:    Joshua W. Cohen, Esq.
         Daniel J. Carragher, Esq.
         Jennifer M. Palmer, Esq.

**DAVID S. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

Plaintiff Drivetrain, LLC ("**Drivetrain**" or "**Plaintiff**"), in its capacity as Trustee of the SunEdison Litigation Trust, and in turn on behalf of debtor EverStream HoldCo Fund I, LLC ("**Everstream Debtor**"), has moved for leave to file a second amended complaint (the "**Second Amended Complaint**") to add an entirely new claim for breach of fiduciary duty and to name two new, individual defendants, P.J. Lee ("**Lee**") and Bruce Pflaum ("**Pflaum**") [ECF No. 50 (the "**Motion**")]. Last year, the Court granted Plaintiff's earlier motion for leave to add a breach of contract claim against the original entity defendants by filing an initial amended complaint (the "**First Amended Complaint**"). Defendants EverStream Solar Infrastructure Fund I LP (the "**Everstream Partnership**") and EverStream Solar Infrastructure Fund I GP LP ("**Everstream General Partner**" and, together with the Everstream Partnership, "**Defendants**"), oppose Drivetrain's request. [*See* Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Leave to Amend Complaint, ECF No. 51 ("**Opposition**")]. They challenge the Second Amended Complaint on grounds of futility—contending that the governing partnership agreement eliminated fiduciary duties and imposed in their place solely contractual obligations, that Everstream General Partner's complained-of conduct was authorized by the governing partnership agreement, that the Plaintiff does not sufficiently allege unfairness, that the newly proposed claim does not relate back to the original complaint, and that the claim is time-barred and was raised only after undue delay. [*Id.* at 10–24].

For the reasons that follow, the Court concludes that the governing agreement explicitly overrode fiduciary duties to the extent any such duties were not imposed by the terms of the partnership agreement itself. The Court therefore concludes that the new proposed amendments, all of which seek to add a breach-of-fiduciary-duty claim against the existing Defendants and two

2

new individual defendants, are futile, and therefore should not be allowed. In light of this conclusion, the Court does not reach Defendants' other arguments, including defenses of undue delay and statute of limitations.

## BACKGROUND

**A. The Everstream Partnership and Everstream Debtor's Default on Its Investment in the Everstream Partnership**

Unless otherwise noted, the following background information is taken from the Court's July 2021 decision that authorized Plaintiff to file the First Amended Complaint. *Drivetrain, LLC v. EverStream Solar Infrastructure Fund I LP (In re SunEdison, Inc.)*, No. 16-10992, Adv. No. 19-01220, 2021 WL 3176070 (Bankr. S.D.N.Y. July 27, 2021) ("*Drivetrain I*"). The Everstream Partnership is a Delaware limited liability partnership that was formed to invest in and operate renewable energy assets. Everstream General Partner served as the general partner of the Everstream Partnership, and Everstream Debtor invested in that partnership as a limited partner. Pursuant to a subscription agreement dated February 7, 2013 (the "**Subscription Agreement**"), Everstream Debtor—itself formed for the purpose of investing in the Everstream Partnership—committed to provide up to $30 million in capital funding to the Everstream Partnership upon a capital call or calls, as provided for in the Limited Partnership Agreement of the Everstream Partnership dated February 7, 2013 (as amended and restated in accordance with its terms, the "**Partnership Agreement**").

The Partnership Agreement provided in relevant part as follows regarding limited partners' obligations to make payments in response to capital calls, and regarding the consequences of a failure to meet those obligations. Each limited partner (including Everstream Debtor) agreed to fund partnership investments by paying up to the amount of the limited partner's "Capital Commitment," defined as "with respect to any Limited Partner, the aggregate contribution such Limited Partner has agreed to make to the [Everstream] Partnership, whether or not contributed,

3

as may be modified by the express terms of this [Partnership] Agreement." [ECF No. 20-1 ("**Partnership Agreement**") § 1]. These payments were not required immediately upon the effectiveness of the Partnership Agreement but were required to be made in response to "Capital Calls," when such calls were made by the Everstream Partnership. [*See* Partnership Agreement §§ 1, 5.1]. If a limited partner failed to make a required payment in response to a capital call and failed or refused to cure the missed payment following notice, Everstream General Partner had the authority to designate it as a "Defaulting Partner." [*See id.* § 6.1]. If a Defaulting Partner failed to cure its default by paying its required contribution and any interest accrued because of the delay within ten days after receipt of a "Default Notice," then Everstream General Partner had the authority to deem that Defaulting Partner in "Material Default" under the Partnership Agreement. [*See id.*].

Upon such a Material Default, Everstream General Partner was authorized to pursue various remedies "available to the [Everstream] Partnership under this Agreement or at law or in equity[.]" [*Id.* § 6.2]. Section 6.6 of the Partnership Agreement is particularly relevant, providing in part:

> The General Partner may make the changes in the interest of a Defaulting Partner that is in Material Default provided for in . . . Section 6.6.
>
> (a)     ***The General Partner may reduce or eliminate the Defaulting Partner's Capital Commitment, Capital Contributions and Uncontributed Capital Commitment to zero*** or by such proportion as the General Partner may elect in its discretion, and ***no Defaulting Partner shall be entitled to any consideration in connection with any such reduction or elimination***. If the Capital Commitment of a Defaulting Partner is reduced, then the Sharing Percentages of the Partners shall be adjusted accordingly with the result that future distributions to the Defaulting Partner pursuant to Section 8.2 will be reduced or eliminated.

4

(Emphasis added.)  Further, to the extent a Defaulting Partner's "Sharing Percentage is reduced to zero, then the [Everstream] General Partner may cause the Defaulting Partner's interest in the Partnership to be extinguished."  [*Id.* § 6.6(c)].

Between March 2013 and May 2014, EverStream Debtor made capital call payments to the Everstream Partnership totaling $21,073,368.00, which were directly paid by either SunEdison or debtor NVT LLC ("**NVT**").  In November 2015, the Everstream Partnership issued a capital call notice in the amount of $212,014.00 (the "**November 2015 Capital Call**") that Everstream Debtor failed to pay.  In a letter dated February 23, 2016 (the "**February 2016 Letter**"), Defendants informed Everstream Debtor that, as a result of its failure to satisfy the November 2015 Capital Call, it was in "Material Default" under the Partnership Agreement and that, accordingly, Everstream Debtor's partnership interest had been "extinguished for no consideration pursuant to Section 6.6 of the Partnership Agreement."  [ECF No. 11 Ex. C].  Plaintiff does not dispute that Everstream Debtor was a "Defaulting Partner," nor that its default was "Material," as those terms are used in the Partnership Agreement.

In March 2016, Defendants informed Everstream Debtor that its partnership interest could be reinstated, notwithstanding its default, if Everstream Debtor paid the Everstream Partnership $3,758,523.26 (the "**March 2016 Capital Call**"), an amount that was the sum of (1) the November 2015 Capital Call plus accrued default interest and (2) the pro rata amount that Everstream Debtor would have needed to fund in response to an additional capital call to all of the Everstream Partnership's limited partners in the total amount of $8,337,962.00 if Everstream Debtor's partnership interest had not been terminated.  Defendants stated that Everstream Debtor's partnership interest would remain "extinguished for no consideration" unless and until the Everstream Partnership received the full amount of the March 2016 Capital Call.

5

Everstream Debtor made no payment in response to the March 2016 Capital Call. Defendants, in a letter dated April 22, 2016 (the "**April 2016 Letter**"), notified Everstream Debtor that it would not be reinstated as a limited partner and that its partnership interest, to the extent not extinguished as of February 2016, was being extinguished in exchange for "no consideration."

### B. Ensuing Procedural History

On April 21, 2016, SunEdison and certain of its affiliates, including NVT, commenced voluntary cases under Chapter 11 of the Bankruptcy Code. Everstream Debtor filed its Chapter 11 case on July 20, 2016. [*See* Bankr. S.D.N.Y. 16-12058, ECF No. 1].

On April 19, 2019 Plaintiff, on behalf of Everstream Debtor, filed an adversary proceeding complaint against Defendants in this Court. [ECF No. 1 (the "**Initial Complaint**")]. Plaintiff's Initial Complaint included two causes of action: a claim for fraudulent transfer pursuant to Sections 548 and 550 of the Bankruptcy Code, and a claim for disallowance of claims pursuant to Section 502(d) of the Bankruptcy Code. [*Id.* ¶¶ 35–43].

As noted, in 2021, Plaintiff moved for leave to amend its Initial Complaint. Plaintiff submitted a proposed amended complaint that added a claim for breach of contract, essentially asserting that the Everstream Partnership breached the Partnership Agreement by deeming Everstream Debtor's prior capital-call payments in excess of $21 million to have been forfeited as a consequence of its failure to honor subsequent capital calls.

Over Defendants' objections including on grounds of futility, the Court granted leave to amend, concluding that Partnership Agreement Section 6.6 and the agreement overall were ambiguous and susceptible of the reading Drivetrain urged. Drivetrain subsequently filed the First Amended Complaint. [ECF No. 43]. Defendants answered the First Amended Complaint [ECF No. 46], and the case proceeded to discovery, [ECF No. 48 (the "**Discovery Schedule**")]. The

6

Discovery Schedule sets forth May 22, 2022 as the deadline for fact discovery and August 17, 2022 as the deadline for expert discovery. [Discovery Schedule ¶¶ 2, 5].

### C. The Current Motion to Amend

Drivetrain has now moved for leave to amend the complaint a second time. [ECF No. 50]. The proposed Second Amended Complaint asserts a new claim or cause of action for breach of fiduciary duty, and adds two new defendants, Lee and Pflaum, solely on the fiduciary duty breach claim. [ECF No. 50-2]. The Second Amended Complaint includes new factual allegations that, in essence, Everstream General Partner and its principals Lee and Pflaum violated the Partnership Agreement when they extinguished Everstream Debtor's partnership interest without first obtaining the approval of the advisory committee of limited partners (the "**LP Advisory Committee**") notwithstanding that these defendants stood to financially benefit from the extinguishment of Everstream Debtor's partnership interest. [SAC ¶¶ 29, 34]. The only modification contained in the claims or causes of action portion of the Second Amended Complaint is the addition of a new claim against Everstream General Partner, Lee, and Pflaum "[u]nder Delaware law" for "breach of fiduciary duty" based on their elimination of Everstream Debtor's interest without prior approval from the LP Advisory Committee. [SAC ¶¶ 51-57]. Drivetrain further asserts that it learned only in January 2022 that the decision to extinguish its interest was made without clearance by the LP Advisory Committee, notwithstanding that the decisionmakers Lee and Pflaum were not disinterested in that decision. Defendants oppose the motion to amend on grounds of futility and undue delay. [ECF No. 51].

The Court held a hearing on the Motion on March 15, 2021 (the "**Hearing**"). Following oral argument, the Court reserved decision.

## DISCUSSION

### A. Legal Standards

Rule 15(a) of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding pursuant to Rule 7015 of the Federal Rules of Bankruptcy Procedure, governs motions for leave to amend pleadings. When the timing and procedural status limitations that are set forth in Rule 15(a)(1) are met, a party may amend its pleading as a matter of course. Fed. R. Civ. P. 15(a)(1). But when a party seeks to amend its pleadings outside of those authorized circumstances, Rule 15(a)(2) requires that the opposing party must consent or the plaintiff must obtain leave of court. The decision to grant or deny a motion to amend rests in "the sound judicial discretion of the trial court." *Adelphia Recovery Tr. v. FPL Grp., Inc. (In re Adelphia Commc'ns Corp.)*, 452 B.R. 484, 489 (Bankr. S.D.N.Y. 2011) (quoting *Evans v. Syracuse City Sch. Dist.*, 704 F.2d 44, 47 (2d Cir. 1983)).

Generally, a court "should freely give leave when justice so requires," but may deny a motion to amend in instances of undue delay, bad faith, dilatory motive, undue prejudice to the opposing party, or futility. Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962). The "presence of any one of these factors can be sufficient to deny a motion to amend a complaint." *In re AMR Corp.*, 506 B.R. 368, 382 (Bankr. S.D.N.Y. 2014). Here, Defendants assert that the breach of fiduciary duty claim in the proposed Second Amended Complaint is futile for reasons including that the Partnership Agreement's exculpation provision eliminates otherwise-applicable fiduciary duties to the extent they are not specifically incorporated in applicable agreements. [*See* Opposition at 10–15].

An amendment to a pleading is considered futile "if the proposed claim [cannot] withstand a motion to dismiss" pursuant to Rule 12(b)(6). *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002). To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain

8

"sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility is achieved when the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," beyond a "sheer possibility that a defendant acted unlawfully." *Iqbal*, 556 U.S. at 677–78; *accord Twombly*, 550 U.S. at 556. The Second Circuit has explained that the court must determine "whether the well-pleaded factual allegations, assumed to be true, plausibly give rise to an entitlement to relief." *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 679).

In considering such a motion, "courts must consider the complaint in its entirety as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Bernard L. Madoff Inv. Sec. LLC)*, Adv. No. 08-01789, 2020 WL 401822, at *4 (Bankr. S.D.N.Y. Jan. 23, 2020) ("**Madoff I**") (quoting *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007)). Such sources include "documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit." *Madoff I*, 2020 WL 401822 at *4 (citations omitted). When a complaint cites excerpts of a document, a court may consider other parts of the same document submitted for purposes of a motion to dismiss. *Id.*; *see also Picard v. Magnify Inc. (In re Bernard L. Madoff Inv. Sec. LLC)*, 583 B.R. 829, 840 (Bankr. S.D.N.Y. 2018) (noting that a complaint is "deemed to include any written instrument attached to it as an exhibit, documents incorporated in it by reference and other documents 'integral' to the complaint") (citations omitted).

9

A court may also deny leave to amend a complaint "where the motion is made after an inordinate delay," the plaintiff does not satisfactorily explain the delay, and where amendment would prejudice the defendant. *Cresswell v. Sullivan & Cromwell,* 922 F.2d 60, 72 (2d Cir. 1990); *Fontoine v. Permanent Mission of Chile to United Nations*, No. 17 Civ. 10086, 2019 WL 2482374, at *3 (S.D.N.Y. June 14, 2019); *Cerni v. J.P. Morgan Sec. LLC*, 208 F. Supp. 3d 533, 543–44 (S.D.N.Y. 2016). The nonmoving party's required showing of prejudice decreases as the length of delay increases. *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993) ("[T]he longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice.") (internal quotation marks omitted). But delay, absent a showing of bad faith or undue prejudice, is not a standalone basis for denying a motion to amend. *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008).

B. **Analysis**

The first time that Drivetrain sought leave to amend its complaint, the Court considered documents that were integral to the complaint albeit beyond that complaint's four corners: the Subscription Agreement, the Partnership Agreement, and the February 2016 and April 2016 Letters. *Drivetrain I* at *4. The Second Amended Complaint continues to rely on and/or quote from those same four documents. [SAC ¶¶ 20, 24, 27–29, 31]. Defendants invoke the Partnership Agreement by contending that it eliminates fiduciary duties, thus rendering the proposed Second Amended Complaint futile. [Opposition at 10–15]. Further, Drivetrain's Reply Memorandum references additional provisions of the Partnership Agreement not cited in the Second Amended Complaint to support its contention that the Partnership Agreement's provisions create ambiguity concerning the asserted need for LP Advisory Committee approval of actions taken pursuant to the agreement's Section 6.6(a). [ECF No. 52 ("**Reply**") at 2, 5–6]. Accordingly, such sources

10

may be considered in evaluating the merits of the Motion under the Rule 12(b)(6) and Rule 15 standard of review.

The parties' rights and obligations under the Partnership Agreement are governed by Delaware law. [Partnership Agreement § 19.5]. Under Delaware law, courts "give priority to the intention of the parties." *In re Live Primary, LLC*, 626 B.R. 171, 191 (Bankr. S.D.N.Y. 2021) (citations omitted). In discerning the parties' intent, courts look first to the contract's express language. *Id.* (citations omitted). For partnership agreements, it is the "policy of [Delaware statute] to give maximum effect to the principle of freedom of contract and to the enforceability of partnership agreements." 6 Del. C. § 17-1101(c).

A Delaware-law claim for breach of fiduciary duty requires that a plaintiff make out two elements, (1) the existence of a fiduciary duty and (2) the defendant's breach of that duty. *Palmer v. Reali*, 211 F. Supp. 3d 655, 666 (Bankr. D. Del. 2016) (quoting *Beard Rsch., Inc. v. Kates*, 8 A.3d 573, 601 (Del. Ch. 2010). One such duty— the duty of loyalty — "mandates that the best interest of the corporation and its shareholders takes precedence over any interest possessed by a director, officer, or controlling shareholder and not shared by stockholders generally." *Official Comm. of Unsecured Creditors of Fedders N. Am., Inc. v. Goldman Sachs Credit Partners L.P. (In re Fedders N. Am., Inc.)*, 405 B.R. 527, 544 (Bankr. D. Del. 2009) (quotation marks omitted). To state a Delaware-law breach of this duty, a plaintiff must plead two more loyalty-specific elements, (1) the occurrence of a self-interested transaction, and (2) one that was unfair to the plaintiff. *In re USDigital, Inc.*, 443 B.R. 22, 44 (Bankr. D. Del. 2011).

A director is considered "interested" where he or she stands to obtain a "'personal financial benefit from a transaction that is not equally shared by the stockholders.'" *Id.* (quoting *In re Bridgeport Holdings, Inc.*, 388 B.R. 548, 564 (Bankr. D. Del. 2008)). In addition, a plaintiff can

11

premise a claim for breach of fiduciary duty on the failure to act in good faith. *Id.*; *Stone v. Ritter*, 911 A.2d 362, 370 (Del. 2006). This derives from the premise that the failure to act in good faith, or "'*abdicating* one's directorial duties,'" is the equivalent of breaching the duty of loyalty. *In re Bridgeport Holdings, Inc.*, 338 B.R. at 564 (quoting *Alberts v. Tuft (In re Greater Se. Cmty. Hosp. Corp. I)*, 353 B.R. 324, 344 (Bankr. D.D.C. 2006) (emphasis in original)).

Drivetrain contends that Everstream General Partner owed a fiduciary duty of loyalty to Everstream Debtor under Delaware law [Motion at 10; SAC ¶¶ 51–52]. It contends that this asserted duty was breached because Everstream General Partner (i) stood to and did receive a benefit from the extinguishment of Everstream Debtor's partnership interest [Motion at 10; SAC ¶ 53]; (ii) did so without employing a fair process or yielding a fair price for Everstream Debtor [Motion at 12–14]; and (iii) did not follow Section 9.2(a) of the Partnership Agreement because it did not first obtain the approval of the LP Advisory Committee before extinguishing Everstream Debtor's partnership interest [*id.* at 12–13; SAC ¶ 55], while also violating Delaware law by not paying fair value for Everstream Debtor's partnership interest [Motion at 13–14; SAC ¶ 56].

As to the proposed new individual defendants, Drivetrain alleges that Lee and Pflaum, as at least the functional equivalent of directors and controlling shareholders of corporate general partners, are fiduciaries of limited partners. [Motion at 14–16; SAC ¶ 52]. Drivetrain alleges that Lee and Pflaum controlled Everstream General Partner's day-to-day activities and they made the decision to extinguish Everstream Debtor's interest [Motion at 15; SAC ¶¶ 18, 25], and that Lee and Pflaum personally benefitted from that decision. [Motion at 15; SAC ¶ 35].

Defendants raise several futility arguments opposing the proposed amendment, relying in substantial part on Section 15.1 of the Partnership Agreement, whose title refers to "exculpation" and which exculpates any "Everstream Affiliate" (Everstream General Partner) or principal (such

as Lee and Pflaum) for any loss suffered by Everstream Debtor except in the event of willful misconduct, fraud, gross negligence, or material breach of the Partnership Agreement. [*See Opposition* at 14–15]. In reply, Drivetrain argues that Section 15.1 does not preempt fiduciary duties because, while exculpation clauses may limit or preclude damages for breach of fiduciary duty, they leave in place the duty itself. [Reply at 5]. Further, Drivetrain contends, Section 15.1 and the Partnership Agreement merely confer discretion on Everstream General Partner, which is legally insufficient to eliminate potential liability for willful misconduct, and thus preserves the common law duty of loyalty. [*Id.* at 5-6]. Drivetrain further argues that it has also sufficiently alleged bad faith, although it bases this contention on its view that Everstream General Partner acted "without a pre-existing contractual right to do so." [*Id.* at 6].

The Court concludes, in a nutshell, that Drivetrain's argument overlooks and fails to give effect to the last sentence of Section 15.1, which explicitly overrides otherwise-applicable fiduciary duties to the extent inconsistent with the governing agreements: "To the maximum extent permitted by law, each Exculpated Party's duties to the Partnership, any Partner or any other Person shall be eliminated and replaced with and limited to those set forth in this Agreement." This degree of specificity belies Drivetrain's arguments that the applicable agreements do not override ordinarily applicable fiduciary duties, and, further, distinguishes this case from those where courts have concluded that a mere conferral of discretion or other non-explicit text is insufficient to extinguish fiduciary duties that are imposed as background legal requirements unless contractually disclaimed. Rather, the contract includes the sort of duty waiver or modification that Delaware law allows.

The Partnership Agreement states that it is governed by the Delaware Revised Uniform Limited Partnership Act ("**DRULPA**"), 6 Del. C. § 17-002. [Partnership Agreement §§ 1, 2.1].

13

DRULPA allows limited partnership agreement drafters to "disclaim" fiduciary duties and replace them with contractual duties. *Brinckerhoff v. Enbridge Energy Co., Inc.*, 159 A.3d 242, 252 (Del. 2017) (citing 6 Del. C. § 17-1011(d)). The statute also makes it possible for drafters to limit or eliminate liability for breach of fiduciary duties to a limited partnership, another partner, or another person bound by the limited partnership agreement, provided that the agreement does not limit or eliminate liability for "any act or omission that constitutes a bad faith violation of the covenant of good faith and fair dealing." *Refco Grp. Ltd., LLC v. Cantor Fitzgerald, L.P.*, No. 13 Civ. 1654, 2014 WL 2610608, at *21 (S.D.N.Y. June 10, 2014) (citing 6 Del. C. § 17-1011(f)); *see also Trahan v. Lazar*, 457 F. Supp. 3d 323, 346–47 (S.D.N.Y. 2020) (discussing an LPA's ability under DRULPA to "replace" fiduciary duties with contractual duties).

Delaware courts, applying Chancery Court Rule 12(b)(6) which is analogous to but less exacting than federal civil rule 12(b)(6), *see Winshall v. Viacom Int'l, Inc.*, 76 A.3d 808, 813 n.12 (Del. 2013) ("The *Twombly/Iqbal* plausibility standard is more rigorous than Delaware's counterpart pleading standard."), have dismissed causes of action for breach of fiduciary duty for failure to state a claim where the drafters of a limited partnership agreement "took advantage of DRULPA's flexibility" and eliminated default fiduciary duties in favor of contractually specified ones, *see Allen v. Encore Energy Partners, L.P.*, 72 A.3d 93, 100–01 (Del. 2013). Courts reason that in such contracts, the enumerated contractual duties and the implied covenant of good faith and fair dealing are the "only duties" owed in the aftermath of disclaiming fiduciary duties. *Lonergan v. EPE Holdings, LLC*, 5 A.3d 1008, 1017 (Del. Ch. 2010).

DRULPA requires drafters wishing to take advantage of this legal flexibility to "clearly and unambiguously" disclaim fiduciary duties. *See Miller v. Am. Real Estate Partners, L.P.*, No. CIV.A.16788, 2001 WL 1045643, at *8 (Del. Ch. Sept. 6, 2001). At the same time, the statute's

14

very existence puts contract parties on notice that they may be signing an agreement that disclaims fiduciary duties. *See The Haynes Family Tr. v. Kinder Morgan G.P., Inc.*, 135 A.3d 76 at *2 n.2 (Del. 2016).

The last sentence of Section 15.1 of the Partnership Agreement "clearly and unambiguously" disclaims fiduciary duties, providing (to repeat from above) that, "[t]o the maximum extent permitted by law, each Exculpated Party's duties to the Partnership, any Partner or any other Person shall be eliminated and replaced with and limited to those set forth in this Agreement." [Partnership Agreement § 15.1]. This language compares favorably with contractual language that the Delaware Court of Chancery has held sufficed to disclaim fiduciary duties:

> [a]ny standard of care and duty imposed by this Agreement or under [DRULPA] or any applicable law, rule or regulation shall be modified, waived, or limited, to the extent permitted by law, as required to permit [BB GP] to act under this Agreement or any other agreement contemplated by this Agreement and to make any decision under the authority prescribed in this Agreement.

*Wenske v. Blue Bell Creameries, Inc.*, No. 2017-0699, 2018 WL 3337531, at *12 (Del. Ch. July 6, 2018). The Supreme Court of Delaware also has ruled, on multiple occasions, that even contractual provisions that did not expressly mention fiduciary duties by specifically using the word "fiduciary" could nonetheless disclaim them. *See Brinckerhoff*, 159 A.3d at 253; *Norton v. K-Sea Transp. Partners L.P.*, 67 A.3d 354, 361 (Del. 2013).

Nor has Drivetrain alleged facts sufficient to show that any duty "set forth in" the Partnership Agreement or any other governing agreement establishes the type of fiduciary duty that Drivetrain alleges Defendants violated. In fact, Drivetrain's proposed new cause of action alleges violation of "Delaware law," not any particular contractual provision. [SAC ¶¶ 51-57]. And, while Section 15.1 of the Partnership Agreement does carve out from exculpation acts constituting "willful misconduct, fraud or gross negligence," the proposed Second Amended

15

Complaint does not allege facts permitting a plausible inference of any such conduct. Rather, at most, Drivetrain alleges that the General Partner and its leaders stood to benefit from the elimination of Everstream Debtor's partnership interest because Everstream General Partner — like all limited partners — would eventually receive payment from partnership distributions, which Plaintiff alleges would increase if amounts otherwise due to Everstream Debtor were eliminated. [SAC ¶¶ 53-54]. Neither Everstream Debtor nor this Court has identified law characterizing such an assertedly self-interested or self-benefitting decision as rising to the level of fraud, willful misconduct, or gross negligence.

Indeed, there is a serious question whether Drivetrain has even plausibly alleged facts showing a violation of Section 9.2 of the Partnership Agreement, which is the provision that discusses approvals by the LP Advisory Committee. Section 9.2(a) specifies types of conflict-of-interest transactions for which the Partnership Agreement envisions that LP Advisory Committee approval would be required, and those specific examples do not include the type of conduct alleged here. Further, various other provisions of the Partnership Agreement specify restrictions or procedures governing potentially conflicted transactions or management actions. [*See., e.g.*, Partnership Agreement § 3.5 (multiple subsections establishing procedural and substantive requirements for transactions with affiliate companies)]. But the provisions that Defendants rely on as directly authorizing their discretionary decision to eliminate Everstream Debtor's partnership interest — Sections 6.2 and 6.6 — do not reference Section 9.2's committee approval requirement, they broadly confer discretion on Everstream General Partner, and they do not include any procedural safeguards like those set forth in Section 3.5 as to affiliate transactions. Thus, it is a stretch to assert even that there has been a contractual breach of Section 9.2. Moreover, and most salient for purposes of the Motion, because the proposed Second Amended Complaint seeks not

16

to expand on Drivetrain's contract-breach claim but rather to add a new Delaware-law claim for breach of an asserted fiduciary duty (as seemingly would be necessary to add individual-capacity claims against Lee and Pflaum), whether Section 9.2 was or was not complied with does not support the legal sufficiency of the proposed claim for breach of fiduciary duty.

Drivetrain's response to Section 15.1 entirely fails to grapple with the section's explicit duty-eliminating last sentence. Rather, Drivetrain objects that exculpation clauses in general serve not to "preempt background fiduciary duties," but to "restrict[] the remedy that a party may seek by limiting or eliminating monetary liability." [Reply at 5.] Whether that point ordinarily might or might not permit the successful assertion of a breach-of-duty claim against exculpated individuals, Drivetrain supplies no answer for the explicit duty-eliminating sentence at the end of Section 15.1. As discussed above, that sentence clearly and unambiguously disclaims generally-applicable duties, whether fiduciary or otherwise, and limits parties to the Partnership Agreement to whatever rights and duties are imposed by that agreement.

Nor does case law cited in Drivetrain's reply support the result they seek. In addressing Partnership Agreement Section 15.1, Drivetrain cites three cases, *Feeley v. NHAOCG, LLC*, 62 A.3d 649 (Del. Ch. 2012); *Miller*, *supra*; and *Gelfman v. Weeden Investors, L.P.*, 859 A.2d 89 (Del. Ch. 2004). [Reply at 5–6]. *Feeley* is inapposite because it interprets not DRULPA and its recognition of the attendant power to disclaim fiduciary duties in the limited partnership context, but the Delaware LLC Act. *See Feeley*, 62 A.3d at 664–65. And *Miller* and *Gelfman* if anything support the principle that a limited partnership agreement may eliminate fiduciary duties. *See Gelfman*, 859 A.2d at 112 n.23 (observing that DRULPA allows a limited partnership to expand or restrict fiduciary duties); 2001 WL 1045643, at *8 ("DRULPA puts investors on notice that fiduciary duties may be altered by partnership agreements."). Further, while *Gelfman* did not rule

17

out the possibility that claims of bad-faith managerial conduct might not fall within the law authorizing disclaiming of fiduciary duties, *cf.* 859 A.2d at 112, the Second Amended Complaint does not purport to assert such a claim, and instead raises only a claim for breach of fiduciary duty, *cf. Lonergan*, 5 A.3d at 1017 ("The implied covenant [of good faith and fair dealing] is not a substitute for fiduciary duty analysis"). The Partnership Agreement is also distinguishable from the agreement at issue in *Miller* because the Partnership Agreement in question here expressly says that each Exculpated Party's duties shall be "eliminated and replaced" with those set forth in the Agreement. Thus, unlike in *Miller*, Defendants do not ask the Court to supplant fiduciary duties by implication. 2001 WL 1045643, at *8; *see also Lipman v. GPB Cap. Holdings, LLC*, No. 2020-54, 2020 WL 6778781, at *7 (Del. Ch. Nov. 18, 2020) ("They thus arrive at a much more expansive limitation on liability. But that is not what the provision says."). In the face of this express contractual override of fiduciary duties, Drivetrain fails to state a viable claim for breach of fiduciary duty.

Defendants raise other arguments, notably including a time-bar theory that would require assessment of the relation back doctrine, and an undue delay defense based on Drivetrain's not having raised fiduciary duty claims until six years after the underlying conduct and nearly three years after it commenced this adversary proceeding. Drivetrain responds that it learned of the lack of LP Advisory Committee approval only early this year in the course of discovery. The Court need not and does not resolve these arguments in light of its futility-based denial of the Motion.

## CONCLUSION

For the foregoing reasons, the Court denies the Motion. Plaintiff shall submit a proposed order in a form acceptable to Drivetrain's counsel, or, if consent is not forthcoming, shall settle an order on five business days' notice by filing a notice of the proposed order on the Case

Management/Electronic Case Filing docket, with a copy of the proposed order attached as an exhibit to the notice. The parties are encouraged to attempt to reach agreement on the form of the proposed order. If the parties believe a case management conference would be useful at this time, they may contact chambers to schedule one.

IT IS SO ORDERED.

Dated: New York, New York            *s/ David S. Jones*
      April 26, 2022            HONORABLE DAVID S. JONES
                                        UNITED STATES BANKRUPTCY JUDGE